833 So.2d 202 (2002)
John H. WRIGHTINGTON, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, Appellees.
No. 5D01-3698.
District Court of Appeal of Florida, Fifth District.
December 13, 2002.
John H. Wrightington, Edgewater, Pro Se.
John D. Maher, Tallahassee, for Appellee.
COBB, J.
This is an appeal from an order of the Florida Unemployment Appeals Commission upholding the determination by the appeals referee that John Wrightington was properly terminated from employment by the Greater Daytona Beach Area Young Men's Christian Association, Inc. (YMCA) on the basis of misconduct connected with work within the meaning of unemployment compensation law; more specifically for "insubordination involving the use of profane language."
It is uncontroverted that Wrightington directed vulgar and abusive language to the employer's chief executive officer, Randy Brown, during a meeting between the two in July, 2001, at which meeting Wrightington was terminated. Although Wrightington asserts that his termination preceded the verbal abuse, Brown testified that the abuse preceded the termination and the referee accepted Brown's version. Since the finding in regard to a disputed fact has record support, we accept it for appellate purposes. See Scholastic Book Fairs, Inc. Great American Division v. Unemployment Appeals Commission, 671 So.2d 287 (Fla. 5th DCA 1996).
*203 On the other hand, the Commission asserts in its brief that the conversation between Brown and Wrightington "was overheard by the business manager [Hickey] who was standing at the open door of the CEO's office." The referee did not make this finding and the business manager did not testify. The testimony is conflicting as to whether Hickey stood outside the office open door or was busy doing other things with computers during the exchange between Wrightington and Brown. Hickey was asked to leave the room prior to the exchange between Brown and Wrightington and did so. The testimony of Brown was to the extent:
I asked to meet with Jack [Wrightington]. When Jack got through with doing some of the things he was doing, working with people, he came into the office. We sat down, and at that time, Hal Hickey, who was our business manager, was sitting there as a witness. Jack said that he would not meet if there was a witness. So Hal was excused and Hal stood right outside the door. The door was left open. At that point Jack wanted to start the conversation....
Whether or not Hickey overheard anything is problematic. What is clear is that Wrightington did not want anyone except Brown to hear his statement.
In determining whether the use of vulgar language comes within the purview of an unemployment compensation statute's definition of misconduct, courts have considered several factors including the frequency of the vulgar utterance, the presence of any fellow employees or clients, the existence of any provocation, and the object of the abusive language. Benitez v. Girlfriday, Inc., 609 So.2d 665 (Fla. 3rd DCA 1992). In Benitez, the issue was whether Benitez's isolated use of obscene language, directed to a supervisor outside the presence of other persons, constituted misconduct under the unemployment compensation statute so as to bar a claim for benefits. The Third District found that the use of offensive language in such an isolated and private argument was not misconduct as defined by the statute. See also Cullen v. Neighborly Senior Services, Inc., 775 So.2d 392 (Fla. 2nd DCA 2000) (meeting between claimant and supervisor during which claimant raised his voice at supervisor did not constitute misconduct that warranted denial of unemployment benefits to claimant since meeting occurred in a private office and there were only two other employees present); Jorge v. Florida Unemployment Appeals Commission, 765 So.2d 889 (Fla. 3rd DCA 2000) (claimant's use of an obscenity when the manager of the restaurant where he was employed ordered him to continue working did not amount to misconduct where use of foul language was an isolated incident and other employees and restaurant patrons did not hear the claimant's comments); Johnson v. Florida Unemployment Appeals Commission, 513 So.2d 1098 (Fla. 3rd DCA 1987) (employee was not disqualified from unemployment benefits for using vulgar language where such language was not part of a pattern of behavior and did not occur in the presence of others). Compare Davis v. Unemployment Appeals Commission, 715 So.2d 1157 (Fla. 5th DCA 1998) (unemployment compensation properly denied where record was clear that Davis uttered profanities directed toward her manager in the presence of other employees); Suluki v. Unemployment Appeals Commission, 644 So.2d 552 (Fla. 5th DCA 1994) (unemployment compensation denied where Suluki openly and loudly cursed the company president and undermined her authority in front of other employees, including two new employees in training); Hines v. Department of Labor and Employment Security, *204 455 So.2d 1104 (Fla. 3rd DCA 1984); and Varig Brazilian Airlines v. Florida Department of Commerce Division of Employment Security, 354 So.2d 921 (Fla. 3rd DCA 1978) (employee's repeated use of vulgarities in front of customers, among other things, was sufficient to warrant disqualification from benefits).
Given the fact that this was an isolated incident of cursing and that it took place within the confines of a private office there is no substantial and competent evidence to support a finding of misconduct under the unemployment compensation statutes.
Since our foregoing considerations mandate reversal of the Commission's order, we do not reach the due process concerns raised by the appellant in regard to notice that insubordination regarding profanity was an issue for consideration at the hearing before the referee.
REVERSED AND REMANDED.
SHARP, W., J., concurs specially with opinion.
PLEUS, J., dissents with opinion.
SHARP, W., J., concurring specially.
I agree with the dissenting opinion written by Judge Pleus that in some contexts use of profane or obscene language directed at an employerwhether overheard by others or notis grounds for denial of unemployment benefits. Indeed, in a church work place or perhaps a YMCA work place, language used by employees should be more discrete than in other work places such as bars. However, after reading the record, I conclude this is not such a case because use of profane or obscene language was not the reason for the employee's (Wrightington's) termination.
The record discloses that Brown's (the CEO of the Greater Daytona Beach YMCA) major issue with Wrightington was that Wrightington failed to follow the chain of command in presenting complaints about Brown to the Board of Directors, other staff, and members of the YMCA. Wrightington admitted he had been contacted by members of the Board and others, including his immediate supervisor, Reeves, about Brown's administrative and managerial skills, which Wrightington thought were inadequate. He had also, together with others, accused Brown of various improprieties including taking subordinate colleagues to a lap dancing bar in Tampa and talking to subordinate employees about explicit sexual matters. Further, there was an ongoing disagreement between Wrightington and Brown about the number of hours Wrightington was required to work. In sum, there was disagreement and antagonism between the two men, over more than a two year time span.
Wrightington asserted he was at all times deferential to Brown and not rude or profane, until he was terminated. Brown did not deny this.
The conflict between the two men came to a head on July 6, 2001. Brown admitted he forced Reeves, Wrightington's immediate supervisor, to resign the day before because Reeves refused to fire Wrightington. Wrightington knew when Brown arrived at his workplace on July 6th, that Reeves had resigned because he could not ethically fire him, and that Brown knew he was going to fire him. Brown admitted he had prepared and brought with him to the workplace a letter formally terminating Wrightington.
Knowing that he was going to be fired and that Reeves, his friend and direct supervisor, had been forced to resign, Wrightington requested that the two men meet alone. A witness Brown had brought with him, the business manager, left the office. Although Brown later suggested *205 the business manager was standing just outside the office to listen to the conversation, there was no proof of that. Further, Brown tacitly admitted the business manager had in fact gone to Wrightington's work station and was attempting to down load his computer while their conversation took place. Why would he be doing that if he did not also know Wrightington had been fired?
Wrightington admitted he called Brown profane and obscene names at that meeting. He explained this by referring to a song by Kenny Rogers called the "Coward of the Country." One of the verses goes "twenty years of crawling was welling up inside him." Wrightington felt free to tell Brown what he thought of him, man to man, in the context of already having been fired.
The appeals referee found that the employer discharged the claimant for insubordination involving the improper use of the chain of command and for insubordination involving improper conduct. With regard to the improper use of the chain-of-command ground, the referee found that charge not supported by competent and substantial evidence. But he did find Wrightington's use of profane language was a valid insubordination ground and that it was established "by the claimant's own testimony."
However, based on Wrightington's testimony, he knew of the decision to fire him and the profanity occurred after that decision had been made. Thus I conclude there was not competent evidence to support the referee's finding on the second ground either. I agree Wrightington is entitled to unemployment compensation benefits.
PLEUS, J., dissenting.
I respectfully dissent.
In my opinion, insubordination involving the use of profane language is grounds under the statute for a denial of unemployment benefits, especially when the profanity is used at a YMCA. To me, the standards of behavior which the employer is entitled to expect vary depending on the circumstances. The YMCA is more than a mere neighborhood gym. People using YMCA facilities have the right to expect an atmosphere of civility and moral conduct reflected in the ideals of the sponsor. I would affirm the denial of benefits to John Wrightington.