(77 P.3d 1002)

No. 89,348

JAMES B. SILER, *Appellant*, v. KANSAS EMPLOYMENT SECURITY
BOARD OF REVIEW, DEFFENBAUGH INDUSTRIES, and JOHNSON
& ASSOCIATES, *Appellees*.

Opin-
ion filed October 17, 2003.

*Jeffery A. Sutton*, of Jamison & Associates LLC, of Kansas City, for appellant.

*James R. McEntire*, of Kansas Employment Security Board of Review, of To-
peka, for appellees.

Before PIERRON, P.J., MALONE and GREENE, JJ.

GREENE, J.: James Siler appeals an order of the district court affirming the decision of the Employment Security Board of Review (Board), which had denied him unemployment compensation benefits due to a finding that a profusion of profanity toward his supervisor had violated a duty or obligation reasonably owed his employer. We treat the issue as one of first impression in Kansas and affirm.

*Factual Overview*

Siler worked as a lead man in the weld shop at Deffenbaugh Industries since 1993. Deffenbaugh had a written policy in the employee handbook which stated that an employee could be disciplined if he or she engaged in "threatening, intimidating, coercing, using abusive or vulgar language, or interfering with the performance of other employees, customers or vendors." His supervisor on the day in question was Rick Aiello, whom Siler claimed was "barely recognized as supervisor" since Aiello had been supervisor only 23 days after Siler was not chosen for the position. As to the critical events, the referee's findings of fact state:

"On October 24, Mr. Aiello was looking over some work that some employees had performed and determined that measurements were not correct and the job needed to be redone. He then ordered some employees to redo the job.

"The following day, the claimant was looking over the work when he became upset because the work he had supervised the previous day had been redone. As he was looking at the job, Mr. Aiello approached him and the claimant yelled, 'Don't think you are better than us. I've got 20 years of experience and several college degrees.' At one point, Mr. Aiello asked the claimant if he was yelling at him. The claimant responded, 'you are damn right I'm yelling at you. You are no better then me, mother fucker. You are redoing my work.' Mr. Aiello tried to explain to the claimant that the dimensions were off. The claimant responded with additional profanity."

According to Aiello, this heated encounter continued with Siler calling Aiello a "motherfucker" more than 20 times before Aiello fired Siler and ordered him to leave the premises. Siler continued his profane outbursts as he proceeded to leave, and the profanity was overheard by at least two employees.

Although Siler's version of these facts was materially different, the referee who heard the testimony on administrative appeal expressly found that Aiello's version was more credible. More importantly, Siler now concedes that he used profanity and yelled at his supervisor and takes no exception to the findings of fact set forth in the referee's opinion.

The initial examiner for the Kansas Department of Human Resources allowed Siler to receive unemployment insurance benefits, finding that the evidence was insufficient to establish misconduct under the applicable statute. On the initial administrative appeal, the referee concluded that Siler's use of profanity and yelling at his supervisor constituted misconduct and denied Siler unemployment benefits. On appeal of the referee's order, the Board in a split decision adopted the referee's findings and conclusions and affirmed her decision. The district court affirmed, and Siler perfected this appeal.

*Standard of Review*

The district court's review of a final order of the Board is governed by K.S.A. 77-601 *et seq.*, and this court reviews the agency's decision in the same manner and with the same statutory standards. *Farmers Co-op Elevator v. Ks. Employment Security Bd. of Review*, 25 Kan. App. 2d 567, 571, 966 P.2d 699, *rev. denied* 266 Kan. 1108 (1998). The burden of proving the invalidity of the Board's order is on the employee. K.S.A. 77-621(a)(1). Under the doctrine of operative construction, we may give great weight and judicial deference to the Board's interpretation of applicable law. *In re Application of Zivanovic*, 261 Kan. 191, 193, 929 P.2d 1377 (1996). Our review of evidentiary matters is made in the light most favorable to the Board. *Barnes v. Employment Security Board of Review*, 210 Kan. 664, Syl. ¶ 4, 504 P.2d 591 (1972). Persons claiming unemployment benefits, however, are entitled to a liberal interpretation of the employment security statutes. *Farmers Co-op Elevator*, 25 Kan. App. 2d at 572.

*Statutory Context*

Pursuant to K.S.A. 44-706(b)(1), employees discharged for "misconduct" are not eligible for unemployment compensation benefits. The statute defines "misconduct" as follows:

"For the purposes of this subsection (b), 'misconduct' is defined as a violation of a duty or obligation reasonably owed the employer as a condition of employment."

This statutory definition was last amended in 1995, deleting the express requirements that the employer must show either: (A) willful and intentional action which is substantially adverse to the employer's interests; or (B) carelessness or negligence of such degree or recurrence as to show wrongful intent or evil design. L. 1995, ch. 235, sec. 3. In *Pouncil*, our Supreme Court noted that these legislative changes relaxed or lowered the standard for finding "misconduct" under K.S.A. 44-706(b)(1). 268 Kan. at 479.

The question framed in this appeal is whether the Board erred as a matter of law in concluding that Siler's profane outbursts constituted 'misconduct' under the relaxed definition of the statute as amended.

*Treatment of the Issue in Other Jurisdictions*

Whether the use of profane or abusive language directed at a supervisor constitutes "misconduct" in the context of unemployment compensation is an issue of first impression in Kansas. Notwithstanding some minor variation in the operative statutory definitions in other jurisdictions, the issue that we face has been litigated rather extensively elsewhere, and caselaw from these jurisdictions is replete with helpful analysis. See Annot., *Use of Vulgar or Profane Language As Bar To Claim For Unemployment Compensation*, 92 A.L.R.3d 106, 117-23.

In Iowa, the appellate courts have summarized suggested standards to determine whether profanity constitutes misconduct in this context. Where the use of vulgar language is an isolated incident in an environment where decorous language is not required, and is not occasioned by a deliberate refusal to obey a reasonable directive, it is viewed as only a minor "peccadillo" and not as misconduct. Where used in front of customers, however, or directed toward a supervisor with either a refusal to obey, an implicit threat of violence, or in a manner to undermine authority, such vulgarity constitues a sufficient disregard of an employer's interests as to constitute "misconduct." See *Deever v. Hawkeye Window Cleaning, Inc.*, 447 N.W.2d 418, 420-21 (Iowa App. 1989).

In Pennsylvania, the courts examine the language used to determine whether it is, in modern parlance, abusive, vulgar, or offensive; if the language is found to fit within one of these categories, it will constitute willful misconduct unless either provoked or de minimis. *Allen v. Unemp. Comp. Bd. of Review*, 162 Pa. Commw. 250, 255, 638 A.2d 448 (1994). Where a claimant referred to his manager as a "two-faced, lying, motherfucker" in the presence of other employees, he was disqualified from receipt of unemployment benefits. *Garza v. Unemp. Comp. Bd. of Review*, 669 A.2d 445 (Pa. Commw. 1995).

In New York, unemployment benefits have been denied where the conduct involves "insubordinate language that demonstrates disrespect for one's supervisor." *In re Claim of Greene*, 243 App. Div. 2d 913, 663 N.Y.S.2d 358 (1997).

In Virginia, a finding of willful misconduct for use of profanity necessarily depends upon the particular circumstances of the case, but factors to be considered include: (i) severity of the language used; (ii) quantity of the language used; (iii) whether spoken in the presence of customers, clients, or other employees; (iv) whether the employee has a record of such misconduct; (v) whether prior warnings were given; and (vi) whether the language was provoked by the employer. *Kennedy's Piggly Wiggly Stores, Inc. v. Cooper*, 14 Va. App. 701, 419 S.E.2d 278 (1992).

In Florida, cursing at the president of the company in the presence of two new trainees constituted misconduct disqualifying benefits. *Suluki v. Unemployment Appeals Com'n*, 644 So. 2d 552 (Fla. Dist. App. 1994). In other cases, however, Florida courts have reversed the denial of benefits, finding no misconduct for isolated incidents of profanity. *Bivens v. Trugreen LP*, 845 So. 2d 347, 348 (Fla. Dist. App. 2003) (claimant used profanity in one voice mail message to his supervisor and on one occasion on sales floor); *Wrightington v. Unemployment Appeals Com'n*, 833 So. 2d 202 (Fla. Dist. App. 2002) (claimant's vulgar and abusive language toward chief executive officer was isolated incident occurring in confines of private office); *Donnell v. University Community Hosp.*, 705 So. 2d 1031 (Fla. Dist. App. 1998) (claimant failed to follow recent policy change regarding garbage can liners, engaged in loud

argument in hallway with supervisor when confronted with non-compliance, and initially refused supervisor's command to go to his office); *Benitez v. Girlfriday, Inc.*, 609 So. 2d 665 (Fla. Dist. App. 1992) (claimant engaged in telephone argument with branch manager during which she used profanity when referring to manager); *Johnson v. Fla. Unemp. Appeals Com'n*, 513 So. 2d 1098 (Fla. Dist. App. 1987) (claimant used profanity during conversation in private office with supervisor).

In Mississippi, denial of benefits has been affirmed where the claimant admitted that she referred to her supervisor in a derogatory manner, using profane language, and had previously received a warning after using such language toward another employee. *Norman v. Magnolia Regional Health Center*, 848 So. 2d 213 (Miss. App. 2003).

## Analysis and Test for Profanity as Misconduct in Kansas

As discussed above, the applicable statute in Kansas requires that, in order to disqualify a claimant from unemployment benefits, the employee's misconduct must violate a duty or obligation reasonably owed the employer as a condition of employment. Although each case must be analyzed on its unique facts, we conclude that profanity directed toward one's supervisor can constitute misconduct where it is not de minimis, but is of such nature and under such circumstances that it jeopardizes the ability of the employer to maintain order in the workplace. In making this determination, it is appropriate to consider: (i) severity of the language used; (ii) quantity of the language used; (iii) whether the language was spoken in the presence of customers, clients, or other employees; (iv) whether the employee has a record of such misconduct; (v) whether prior warnings were given; (vi) whether the language was provoked by the employer; (vii) whether the language was accompanied by threat of violence; and (viii) whether the language was accompanied by material and substantial disobedience. Kansas employees should be obligated to refrain from such aggravated use of profanity or abusive language as a condition of employment, and the failure to honor such obligation in a given case could lead to

the disqualification for unemployment benefits under our statutory scheme.

The Board adopted the referee's findings and conclusions that Siler's repeated use of profanity toward his supervisor, combined with insubordinate behavior questioning his supervisor's authority in an open area, constituted misconduct under the statute. We agree, but we also note that the absence of provocation, the presence of other employees within earshot, and the fact that the encounter could only be characterized as an unreasonably extended barrage of particularly vulgar language, further support the conclusion of misconduct under the statute.

The district court's order affirming the Board is affirmed.