No. 86,268

HARTFORD UNDERWRITERS INSURANCE COMPANY, *Petitioner-Appellee*, v. STATE OF KANSAS, DEPARTMENT OF HUMAN RESOURCES, *Respondent-Appellant*, and RICK MEIER, *Respondent-Appellee*.

(32 P.3d 1146)

Opinion filed October 19, 2001.

*Don Doesken*, of Kansas Department of Human Resources, argued the cause and was on the brief for appellant.

*Thomas R. Hill*, of Hill, Beam-Ward & Kruse, L.L.C., of Overland Park, argued the cause, and *Mark Beam-Ward*, of the same firm, was with him on the on the brief for appellee, Hartford Underwriter Insurance Company.

The opinion of the court was delivered by

LOCKETT, J.: The Kansas Department of Human Resources (KDHR) appeals the district court's reversal of the Secretary of KDHR's (Secretary) finding that the personal care attendants of an injured worker receiving workers compensation benefits for an injury are employees of the injured worker; therefore, the worker is responsible for unemployment insurance taxes. The Secretary claims that (1) the injured worker is an employer subject to the Kansas Employment Security Law, K.S.A. 44-701 *et seq.*, (2) the district court erroneously considered disputed facts not included in the agency record, and (3) the district court erred in finding that injured worker's former employee, who accepted employment as an independent contractor, is estopped from claiming unemployment compensation benefits.

This action arose out of a claim submitted to the Secretary for unemployment compensation by one of Rick Meier's former personal care attendants, who identified Meier as her former employer. Meier, a quadriplegic confined to a wheelchair, contested the claim, asserting that the personal care attendant had been an independent contractor paid by his insurance carrier, Hartford Underwriters Insurance Company (Hartford). The KDHR field officer found that Meier was the employer and the claimant's earnings were subject to Kansas unemployment insurance requirements.

Meier appealed the KDHR field determination, claiming that Hartford was responsible for payment of compensation to his attendants; therefore, he was not an "employer." A KDHR hearing officer heard the matter on February 16, 2000.

The hearing officer noted that Meier's injury rendered him a quadriplegic primarily confined to a wheelchair. Meier has some use of both arms but no fine motor coordination of the hands. Meier needs assistance getting in and out of bed, dressing, preparing and eating meals, and traveling by vehicle. Meier requires catheterization to relieve his bladder and a nurse to evacuate his bowels.

The hearing officer further found that based upon the recommendation of Meier's treating physician, the workers compensation administrative law judge had ordered that Meier's employer and its insurance carrier provide Meier with nursing services. The par-

ties stipulated that payment for nursing services, including potential tax liability under the Employment Security Law, is the responsibility of the workers compensation employer and its insurance company.

The hearing officer noted that with the approval of the workers compensation administrative law judge, Meier retained individuals to provide attendant care. As a condition of employment, the attendant signs a statement prepared by Meier acknowledging that he or she is an independent contractor. Meier directs the manner the workers perform services for him. He prepares a job description and duties list stating his expectations. Meier prefers to hire individuals with some healthcare experience and who do not require a great deal of training.

Once a worker was retained by Meier, no substitutes are allowed to render the services. The duration of the employment varies. Meier schedules when the attendants are to arrive and depart. Some attendants work full time, others work part time. Most services are performed in Meier's home. The work to be performed was determined by Meier. Meier provides a van and other equipment which attendants use to transport him to appointments or errands.

None of the workers hired own a business providing attendant care to the public. The workers have no discretion as to the manner the services are provided to Meier. The workers were free to have jobs separate from their work for Meier. Few did. Both the worker and Meier could terminate the work relationship at will.

Hartford dictates the amount Meier is permitted to pay the attendants and the number of hours the attendants can work. Hartford pays for the advertising to locate attendant care workers.

Based on these facts, the hearing officer concluded that the former personal attendant worker had been Meier's employee. The Secretary of KDHR affirmed the hearing officer on April 13, 2000.

Meier appealed to the Barton County District Court. The district court first determined that Meier was not the employer of his personal care attendant and the attendant was an independent contractor. The district court reversed the Secretary's order, further finding that the worker was estopped from pursuing a claim of

unemployment insurance because the worker had accepted employment as an independent contractor. The Secretary appealed to the Court of Appeals. The case was transferred to this court pursuant to K.S.A. 20-3018(c). Briefs have been filed by the Secretary and Hartford.

## Standard of Review

The question of whether Meier is an employer under the Kansas Employment Security Law involves review of an agency's interpretation of statutes.

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. [Citation omitted.]" *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999).

## District Court Decision

In reversing the Secretary's finding that Meier was an employer subject to unemployment compensation taxes, the district court reasoned:

"Mr. Meier finds [the] recent decision by the Kansas Department of Human Resources in direct conflict with his prior contact with the State when he attempted to utilize the local employment security office to help him find people to work for him several years ago. The manager of the local employment security office told him since the people who care for him were not employees, he was not entitled to use the services of the local employment security office for purposes of locating care attendants.

"Mr. Meier has no options in having health care workers come in and perform daily services for him. His injuries were not voluntarily incurred by Mr. Meier. The services provided are a statutory requirement ordered by the workers' compensation court, and as a practical matter he has to have someone help him in his daily routine.

"Hartford establishes the rate of pay to the nursing attendants, not Mr. Meier. Hartford determines the number of hours the attendants are allowed to work, not Mr. Meier. Hartford does have the authority to choose the medical providers, and/or health care attendants, but in this case they have allowed Mr. Meier to

pick and choose who he believes should work with him since he is the one who has to deal with them on a daily basis. If Mr. Meier were to be termed a regular businessman, or employer of other employees he would have the right to terminate his business if he chose to do so. In this case he has no right to choose to terminate his business and/or employees because he is always going to need to have an employee as a result of an involuntary accident that occurred to him. This Court cannot believe it was the intent or it should be the interpretation of the statutes of the State of Kansas to conclude Mr. Meier is in fact an employer under these particular facts and circumstances. He has absolutely no choice in the matter as to whether he should have attendants to help him in his daily activities. The Court would admit Mr. Meier does exercise the control over the people once they come to his home to help him with his daily activities. However, the issue for determination on whether he is an employer or the workers are independent contractors goes back before the worker/attendant actually comes to his home. He has no choice in the matter as to whether they are going to be there. He does not determine their pay, or how much time they will work. They are nothing more than health care providers mandatorily required to be there because of a workers' compensation statute or because of a contract for hire situation. These health care services are provided by Hartford to Mr. Meier."

We note that evidence that Meier was denied the services of the local employment security office was not introduced during the administrative hearings.

## Analysis

The Kansas Employment Security Law requires the compulsory setting aside of unemployment reserves to be used for the benefit of persons who become unemployed. The systematic accumulation of funds for this purpose is accomplished by taxing employers and placing the money into the state employment security fund. The Kansas Employment Security Law defines employment in several ways, two of which are relevant to this case. First K.S.A. 44-703(i)(1)(B) provides that "employment" means, in part, service performed by any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an employee. Second, K.S.A. 44-703(i)(3)(D) provides:

"Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the secretary that: (i) Such individual has been and will continue to be free from control or direction over the performance of such serv-

ices, both under the individual's contract of hire and in fact; and (ii) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside all of the places of business of the enterprise for which such service is performed."

The Secretary argues that the services performed by the personal care attendants are Meier's employees under both definitions. Meier argues that he is not the employer; he is a patient and a consumer of home health care services. Meier maintains that home health care attendants are independent contractors who Hartford hires and pays because of its statutory obligation to cure and relieve him of the effects of his injury. The persons employed by Hartford are similar to the hospitals and doctors Hartford paid while he was a hospital inpatient.

The status of "employer" designates who is responsible for certain work-related taxes, benefits, liabilities, and reporting obligations. The criteria for determining whether an employment relationship or, in the alternative, an independent contractor relationship exists vary under different contexts.

We have previously stated there is no absolute rule for determining whether an individual is an independent contractor or an employee. The facts and circumstances in each case determine the status of the individual. *Crawford v. Kansas Dept. of Human Resources*, 17 Kan. App. 2d 707, 709, 845 P.2d 703 (1989), *rev. denied* 246 Kan. 766 (1990). We note that an independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of the employer, except as to the results or product of his or her work. The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, Syl. ¶ 2, 891 P.2d 435 (1995).

An independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his own methods and who is subject to his employer's control only as to the end product or final result of his work. *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 102, 689 P.2d 787 (1984).

In *Crawford*, 17 Kan. App. 2d at 710, the Court of Appeals listed 20 factors used by the Secretary to determine whether an employee-employer relationship exists. The factors include:

"1) [t]he existence of the right of the employer to require compliance with instructions;

"2) the extent of any training provided by the employer;

"3) the degree of integration of the worker's services into the business of the employer;

"4) the requirement that the services be provided personally by the worker;

"5) the existence of hiring, supervision, and paying of assistants by the workers;

"6) the existence of a continuing relationship between the worker and the employer;

"7) the degree of establishment of set work hours;

"8) the requirement of full-time work;

"9) the degree of performance of work on the employer's premises;

"10) the degree to which the employer sets the order and sequence of work;

"11) the necessity of oral or written reports;

"12) whether payment is by the hour, day or job;

"13) the extent to which the employer pays business or travel expenses of the worker;

"14) the degree to which the employer furnishes tools, equipment, and material;

"15) the incurrence of significant investment by the worker;

"16) the ability of the worker to incur a profit or loss;

"17) whether the worker can work for more than one firm at a time;

"18) whether the services of the worker are made available to the general public;

"19) whether the employer has the right to discharge the worker; and

"20) whether the employer has the right to terminate the worker."

The *Crawford* court stated that the above factors are to be considered as a whole with a particular emphasis placed on the employer's right to control the worker. 17 Kan. App. 2d at 713.

We agree with the district court that Meier states a compelling public policy argument in urging this court to find that the personal care attendants are independent contractors of Hartford, rather than his employees. Meier asserts that if this court determines that

he is the employer of the personal care attendants, Hartford, which pays the wages of the attendants, could assume control of the hiring and firing of the attendants, thereby shifting much of the "control" aspect of the attendants' employment to Hartford. Meier claims that Hartford could advertise, contract directly with the attendants, and schedule the hours the attendants work. He argues that this approach is contrary to the public policy of affording injured and disabled individuals the autonomy of choosing those who perform the intimate tasks of bathing, dressing, feeding, and catheterizing. Meier concludes that if Hartford assumes control of who takes care of him, he loses the ability to choose the people he lives with and converses with on a daily basis.

The ability of the health services consumer to direct and control the health services he or she needs is recognized in the literature on the subject and sometimes referred to as "consumer-directed personal assistance services." See, *e.g.*, Sabatino & Litvak, *Liability Issues Affecting Consumer-Directed Personal Assistance Services— Report and Recommendations*, 4 Elder L. J. 247, 254 (1996). The starting point for consumer-directed models is the independent-living model, as developed by disability advocates in the 1970's. Originally, the independent-living movement demanded that consumers be responsible for all management functions. Under this model, the disabled person is considered an active recipient of services and recruits, selects, trains, manages, and directs his or her own services provider. The recipient is a "consumer" of services, not a "patient." The personal assistant is accountable to the consumer, not to a supervising nurse or agency. The worker acts, in effect, as an extension of the disabled person and follows that person's directions as to how to meet his or her needs. This model differs significantly from both the "medical" model of care and the "informal" model of care in matters of control and formality. Sabatino, 255 (citing DeJong *et al.*, *The Independent Living Model of Personal Assistance in National Long-Term-Care Policy*, Generations 90 [Winter 1992]). Kansas has not previously considered the employment status of personal care assistants who are paid by third parties for the benefit of a workers compensation claimant.

Other states have addressed the issue with differing resolutions. In *Locke v. Longacre*, 772 P.2d 685 (Colo. App. 1989), the workers compensation claimant entered into an agreement with Locke to provide substantial home care and limited nursing services for Locke's mother. The agreement purported to create an independent contractor relationship between the claimant and Locke for the benefit of Locke's mother.

Under Colorado law, the putative employer has the burden of proving that the claimant is not an employee. To prove an individual hired is an independent contractor the putative employer must show that the individual hired is free from control and direction in the performance of the service and that the individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed. 772 P.2d at 686 (citing Colo. Rev. Stat. § 8-70-103[10][a] [1986 Repl. Vol. 6B]). The *Locke* court found that because the claimant of unemployment insurance was not engaged in a trade, occupation, profession, or other business independent of, but related to her work relationship with Locke, she was an employee of Locke. 772 P.2d at 687.

In *Latimer v. Administrator*, 216 Conn. 237, 579 A.2d 497 (1990), the Connecticut Unemployment Compensation Act administrator assessed a stroke victim for unpaid unemployment tax contributions on behalf of personal care assistants who rendered at-home services to the stroke victim. The stroke victim appealed.

The personal care attendants were provided to the stroke victim through a nurses registry. Pursuant to the procedure established by the nurses registry, the assistant was paid by the stroke victim through his attorney. The stroke victim, through his attorney, issued an I.R.S. Form 1096 to each of the assistants. The stroke victim retained the right to discharge any personal care attendant. Although the stroke victim's attorney did not directly supervise the performance of the personal assistants' duties, the attendants reported their day-to-day activities to him and he monitored the care given to his client. Neither the stroke victim nor the nurses registry accepted responsibility for social security taxes, personal or professional liability insurance, malpractice liability insurance, workers

compensation insurance, or individual life, health, or disability insurance.

In reaching its decision, the *Latimer* court analyzed the factors relative to ascertaining whether a person is an employee or independent contractor, including the right to control the means and methods of work, the right to discharge, the manner of payment, scheduling work hours, the fact that the services performed were to be personally performed by the particular attendants, and the furnishing of equipment and materials. The court determined that all of these factors weighed in favor of finding that the attendants were the employees of the stroke victim. 216 Conn. at 252.

In *Lewis v. Com'r of Jobs and Training*, 425 N.W.2d 309 (Minn. App. 1988), a person who received services of health care assistants sought review of the determination that the assistants were employees for unemployment compensation purposes. Lewis argued that because the probate court approved the conservator who hired the assistants, the government should be considered the employing unit. As noted previously, under Minnesota law if the employing unit of homeworkers is a government agency, the agency is deemed to be the employing unit of the homeworkers. The Minnesota court again interpreted the statute to pertain only to agencies that provide funds to pay homeworkers. Since Lewis' funds were used to pay the homeworkers, the statute was inapplicable. 425 N.W.2d at 310. The court concluded that Lewis, the person who retained the right to control the means and manner of the homeworkers' performance, the mode of payment, the materials and tools, the control of premises, and the right of discharge, was the employer. 425 N.W.2d at 311.

A case where a personal care assistant was determined to be an independent contractor is *Swillings v. Mahendroo*, 262 N.J. Super. 170, 620 A.2d 452 (1993). There, the plaintiff, Swillings, was a registered private duty nurse working in the home of the defendants, Yog and Kanta Mahendroo, when she slipped and fell in their residence, sustaining a severe ankle fracture. Swillings had medical insurance that paid her medical expenses. She received no state disability or workers compensation benefits for her period of incapacitation.

After Swillings filed a complaint for personal injuries, the Mahendroos asserted in their answer that Swillings was an employee whose claim was barred by the workers compensation act. Swillings then filed a claim for workers compensation and the workers compensation carrier defended against the claim on the basis that Swillings was not an employee but an independent contractor.

The *Swillings* court analyzed Swillings' nursing duties and found that she performed her nursing duties independently without any supervision or control on the part of the Mahendroos; Swillings was required to exercise discretion and professional expertise in the operation of specific machines designed to treat the patient for a specific illness; she dispensed prescribed medication, operated Mahendroo's ventilator, and monitored her condition; and decisions with respect to timing and suctioning and operation of the ventilator were not susceptible to monitoring by the Mahendroos. The court determined that Swillings, a professional nurse who required no supervision in the performance of her duties, was an independent contractor. 262 N.J. Super. at 175.

Although Meier's attendants signed contracts purporting to acknowledge their status as independent contractors, language in a contract that characterizes an individual as an independent contractor, rather than an employee, is not controlling. The primary concern in determining whether the individual is an employee or an independent contractor is what is done under the contract and not what it states. See, *e.g.*, *Latimer*, 216 Conn. at 251. We have previously stated that such provisions in a contract are not effective to keep an employer outside the purview of the act when the established facts bring him within it. In making the determination, " '[w]e look beyond the plain language of the contract to the actual status in which the parties are placed.' " 216 Conn. at 252. The relationship of contracting parties depends on *all* the operative facts; the label which they choose to employ is only one of those facts. *Knoble v. National Carriers, Inc.*, 212 Kan. 331, 337, 510 P.2d 1274 (1973).

The error in the district court's analysis is that the court examined Meier's control over the circumstances that require him to have assistants, not Meier's control over the means and manner

the attendants perform their jobs. Applying the relevant factors delineated in *Crawford*, the Secretary noted that the attendants are trained by Meier as to the services required to be provided by the attendants, Meier hired and supervised the attendants, and Meier established the work hours; the work was performed at Meier's home, and Meier controlled the order and sequence of work; wages were paid by the hour, and Meier furnished the necessary equipment and material; the attendants did not incur a profit or loss; and Meier retains the right to terminate the attendants. The Secretary correctly concluded that for purposes of the Kansas Employment Security Law, Meier is the employer of the attendants.

The district court also concluded that Meier's former personal assistant was estopped from asserting a claim for unemployment compensation because she had accepted the benefits of an independent contractor to obtain work and disclaimed that status to be eligible for unemployment compensation.

Equitable estoppel prevents litigants from maintaining inconsistent positions concerning transactions that are litigated. In *Bowen v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978), we noted:

"The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. [Citation omitted.]

"This court has further said:

'The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction.' [Citation omitted.]

'. . . One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement . . . .' [Citation omitted.]

'. . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the

other party were permitted to deny the existence of such facts.' [Citation omitted.]"

The district court relied on *Marley v. M. Bruenger & Co., Inc.,* 27 Kan. App. 2d 501, 6 P.3d 421 (2000), as authority for applying equitable estoppel.

In *Marley,* Marley was an over-the-road truck driver who owned his own tractor at the time he entered into a relationship with Bruenger. Marley operated a trucking business. At the time he entered into his relationship with Bruenger, he had been in the trucking business for a number of years and had been involved in a variety of other jobs as well.

The relationship between Marley and Bruenger was defined in a written agreement entered into and signed by both parties. The agreement was labeled "Contractor Transportation Agreement" and was signed by both parties. The agreement provided that the parties intended to create an independent contractor and not an employer-employee relationship. The agreement specifically dealt with the question of workers compensation. The agreement specified that the contractor had the option of obtaining coverage through a workers compensation policy or through the carrier's truckers occupational accident insurance.

Marley, pursuant to the agreement, applied for truckers occupational accident insurance. The written application contained a certification that he was not an employee of the trucking company. After Marley was injured in a job-related accident, he applied for and received maximum benefits under the policy. Marley would not have been eligible for those benefits if he had not been an independent contractor at the time of the accident. After exhausting his benefits under the independent contractor policy, Marley disclaimed his status as an independent contractor and claimed to be an employee, eligible for workers compensation benefits. The Court of Appeals applied the doctrine of equitable estoppel and prevented Marley from claiming to be an employee after taking advantage of the benefits of an independent contractor. 27 Kan. App. 2d. at 505.

*Marley* is distinguishable. Here, Meier's former attendant accepted as a condition of employment being characterized as an

independent contractor. The benefits associated with independent contractor status do not rise to the level of benefits realized by Marley. The benefits articulated by the district court were that Meier's former assistant paid her own income taxes and did not require Meier to pay withholding or social security taxes. It is difficult to conclude that these are "benefits" to the attendant. The result of the independent contractor status relieved Meier, not his assistant, of certain taxes. Equitable estoppel will not be applied to preclude the Secretary from determining that Meier is an employer subject to Kansas Employment Security Law.

The decision of the district court is reversed. The Secretary's decision that Meier's personal attendants are employees for purposes of the Kansas Employment Security Law is affirmed.