(231 P.3d 1072)
No. 102,114

MILANO'S, INC., *Appellant*, v. KANSAS DEPT. OF LABOR,
CONTRIBUTIONS UNIT, *Appellee*.

Opinion filed May 14, 2010.

*Michael W. Merriam*, of Topeka, for appellant.

*Darren E. Root* and *A.J. Kotich*, of Kansas Department of Labor, for appellee.

Before MARQUARDT, P.J., BUSER, J., and LARSON, S.J.

MARQUARDT, J.: Milano's, Inc. (Milano's) appeals the district court's order affirming the Kansas Department of Labor's (KDOL)

decision that the Club Orleans' entertainers are employees and not independent contractors under the Kansas Employment Security Law (KESL), K.S.A. 44-701 *et seq.* We affirm.

In July 2002, Milano's acquired a controlling interest in Club Orleans, a gentlemen's club. In 2004, Milano's designated their entertainers as independent contractors.

In response to an unemployment claim submitted by a Milano's entertainer, the Unemployment Tax Contributions Unit of the KDOL began an investigation to determine whether Milano's entertainers are employees or independent contractors. After the investigation, the KDOL auditor determined that the entertainers are employees for unemployment tax purposes.

Milano's requested an administrative hearing with a KDOL hearing officer. After hearing arguments and examining the evidence, the hearing officer determined the entertainers received wages as defined by K.S.A. 2008 Supp. 44-703(o). Because the entertainers received wages, they are employees under K.S.A. 2008 Supp. 44-703(i)(3)(D) unless they fall within an exception under K.S.A. 2008 Supp. 44-703(i)(3)(D)(i) and (ii).

The hearing officer cited Club Orleans' house rules and concluded "there are sufficient indicia of control, or at least the right to control, that the facts of this matter point to an employer-employee relationship." The hearing officer determined that although the owner of Milano's testified that customers frequented Club Orleans for the "good atmosphere, good lighting and good food," the facts indicate that the "atmosphere largely derives from and is based upon the presence of its semi-nude dancers." The entertainers received wages for services as defined by K.S.A. 2008 Supp. 44-703(i)(3)(D) and were not exempt under any exception; therefore, the entertainers are employees under the KESL. The hearing officer ordered Milano's to implement a reporting procedure for the entertainers' tips and to begin paying unemployment insurance.

Milano's filed a petition for judicial review, claiming the hearing officer's order disregarded undisputed facts and made findings of fact not supported by substantial competent evidence. Milano's

also alleged the hearing officer incorrectly interpreted K.S.A. 2008 Supp. 44-703(i)(3)(D).

Quoting K.S.A. 2008 Supp. 44-703(o), the district court agreed with the hearing officer's order that the entertainers' tips constituted wages under the KESL. Additionally, the district court noted that the entertainers were required to complete an application with Milano's before they did any entertaining and to agree to abide by Milano's house rules. Based on this application process, the district court reasoned that a valid contract existed between Milano's and the entertainers. Thus, the burden shifted to Milano's to prove the entertainers were free from its control or direction and the entertainers' performances were outside Milano's usual course of business.

The district court reviewed the statutory exceptions in K.S.A. 2008 Supp. 44-703(i)(3)(D)(i) and (ii) and noted several areas in which Milano's maintained the right to control—place to perform, customers, cover charges, tips, schedules, required to accept drinks from customers, shifts, supplies, and fees charged for certain services. Thus, the district court concluded that Milano's retained greater control over when and how the entertainers worked for Club Orleans than did the entertainers. The entertainers were a significant part of the atmosphere at Club Orleans, and their presence during their shift, along with their performances, fell within Milano's usual course of business.

The district court affirmed the KDOL hearing officer's order declaring that the entertainers are Milano's employees. Milano's appeals.

## APPLICATION OF K.S.A. 2008 SUPP. 44-703

In reviewing a district court's decision that reviewed a state agency's action, the appellate court must first determine whether the district court followed the requirements and restrictions placed upon it. *Jones v. Kansas State University,* 279 Kan. 128, 139, 106 P.3d 10 (2005).

The Kansas Judicial Review Act (KJRA), specifically K.S.A. 77-621, controls the standard of judicial review of an administrative agency's action. The district court's review of a final order of the

Employment Security Board of Review is governed by K.S.A. 77-601 *et seq.*, and this court reviews the agency's decision in the same manner and with the same statutory standards as the district court. *Siler v. Kansas Employment Security Bd. of Review*, 31 Kan. App. 2d 1071, 1073, 77 P.3d 1002 (2003).

Under K.S.A. 77-621(c)(4), this court may grant relief from the KDOL's action if it determines the KDOL erroneously interpreted or applied the law. Resolution of this argument requires interpretation of K.S.A. 2008 Supp. 44-703(i)(1)(B) and K.S.A. 2008 Supp. 44-703(i)(3)(D). The interpretation of a statute is a question of law over which this court has unlimited review. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

This court presumes an administrative agency action is valid. *Jones*, 279 Kan. at 140. Although an administrative agency's interpretation of a statute is persuasive and entitled to judicial deference, it is not binding on this court. This court will correct the administrative agency's interpretation if it is erroneous as a matter of law. *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991).

The Kansas Supreme Court recently reiterated the rules of statutory interpretation in *In re Tax Exemption Application of Mental Health Assn. of the Heartland*, 289 Kan. 1209, 1216, 221 P.3d 580 (2009):

" 'The fundamental rule of statutory interpretation is that a court must give effect to the intent of the legislature as expressed. Thus, when the language of a statute is plain and unambiguous, a court must give effect to that language rather than determine what the law should or should not be, speculate as to legislative intent, add something not readily found in the statute, resort to canons of statutory construction, or consult legislative history.' *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 2, 200 P.3d 1266 (2009)."

Because Milano's is questioning the validity of the agency's action, it bears the burden of overcoming the rebuttable presumption of validity. See K.S.A. 77-621(a)(1); *Jones*, 279 Kan. at 139-40.

The KESL requires employers to set aside unemployment reserves for the benefit of individuals who become unemployed. *Hartford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 269, 32 P.3d 1146 (2001). The set aside is

to protect the public good and prevent economic insecurity resulting from involuntary unemployment. *Jones*, 279 Kan. at 149. To this end, the KESL provides that the Secretary of the KDOL may tax employers and place the money in the Kansas employment security fund. *Harford*, 272 Kan. at 269.

K.S.A. 2008 Supp. 44-703(i)(3)(D) defines "employment" as:

"Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the secretary that: (i) Such individual has been and will continue to be free from control or direction over the performance of such services, both under the individual's contract of hire and in fact; and (ii) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed."

Initially, Milano's claimed that the KDOL erroneously interpreted or applied K.S.A. 2008 Supp. 44-703(o) because "[a]n employer is responsible for tips included in wages under 703(o) *only if there is a contract for hire in the first place.*" Milano's claims the entertainers' tips are "*self-employed* wages," but reasons that "if there is no employment relationship, the fact that the entertainers receive tips is irrelevant to Milano's supposed responsibility under the [KESL]."

Milano's fails to cite any authority for its assertions; therefore, it is unclear how the KDOL erroneously interpreted or applied K.S.A. 2008 Supp. 44-703(o). An issue not briefed by the appellant is deemed waived or abandoned. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

The language of the statute does not suggest that the KDOL must prove the existence of a contract of hire *before* an employer is responsible for including tips in wages as defined by K.S.A. 2008 Supp. 44-703(o). To the contrary, proving the existence of a contract of hire, or establishing that an individual performed services for wages, are two separate methods of showing "employment" under K.S.A. 2008 Supp. 44-703(i)(3)(D). See *Harford*, 272 Kan. at 269-70. Further, the statute clearly states "gratuities, including tips received from persons other than the employing unit, shall be considered wages" and the employee is required to furnish a writ-

ten statement to the employer when the "tips are received from a person other than the employer." K.S.A. 2008 Supp. 44-703(o).

Milano's also argues that the entertainers are merely "separate business persons who pay rent for the theater Milano's provides." Milano's cites *Crawford v. Kansas Dept. of Human Resources*, 17 Kan. App. 2d 707, 709, 845 P.2d 703 (1989), *rev. denied* 246 Kan. 766 (1990), for support.

In *Crawford*, Kathi Crawford appealed after the Kansas Department of Human Resources (KDHR) determined her business, which supplied "demonstrators" to stores or events to promote food or to show how appliances or products work, was subject to state unemployment tax. The KDHR reasoned the demonstrators were employees instead of independent contractors. The district court affirmed the KDHR. 17 Kan. App. 2d at 708.

On appeal, this court examined K.S.A. 2008 Supp. 44-703(i)(3)(D) and the 20 factors used by the KDHR to determine whether there was an employer-employee relationship between the demonstrators and Crawford's business. The *Crawford* court determined the record on appeal failed to indicate the demonstrators were employees, concluding that most of the 20 factors either weighed against finding an employee-employer relationship or were inconclusive. Additionally, the *Crawford* court noted that Crawford did not supervise, direct, or control the workers during the demonstrations and had no control over the manner or method of the demonstrations. 17 Kan. App. 2d 709-13.

Thus, contrary to Milano's assertion, *Crawford* does not stand for the proposition that "employment" must be established under K.S.A. 2008 Supp. 44-703(i)(1)(B) before a contract of hire can exist. The *Crawford* court did not ignore the common-law factors, as Milano's suggests. Instead, the *Crawford* court applied the common-law factors but acknowledged the fundamental question was whether an employer had the right to control the worker's manner and method of performing the service. 17 Kan. App. 2d at 713.

K.S.A. 2008 Supp. 44-703(i)(1)(B) does not require that a contract be executed before a contract of hire can be found under K.S.A. 2008 Supp. 44-703(i)(3)(D). This court will not add lan-

guage to a statute. *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 362, 204 P.3d 1156 (2009).

Milano's contention is without merit and not supported by case law or the plain language of the statute. Accordingly, Milano's argument fails.

*Standard of Judicial Review*

KDOL claims L. 2009, ch. 109, sec. 28(a)(2) requires this court to apply the standard of review that existed on the date of the hearing officer's order, June 5, 2008, and disregard all evidence that does not tend to support the hearing officer's findings of fact.

Previous Kansas Court of Appeals decisions dealing with a procedural statutory change retroactively applied L. 2009, ch. 109, sec. 28(d) (now codified at K.S.A. 2009 Supp. 77-621[a]), which broadens this court's review of an agency's factual findings to include evidence both supporting and *detracting* from an agency's finding. See, *e.g.*, *Douglas v. Ad Astra Information Systems*, 42 Kan. App. 2d 441, 450-51, 213 P.3d 764 (2009). However, it appears that none of these cases discussed or applied K.S.A. 77-621(a)(2).

K.S.A. 77-621(a)(2) requires this court to examine the validity of an agency action "in accordance with the standards of judicial review provided in [K.S.A. 77-621], as applied to the agency action *at the time it was taken.*" (Emphasis added.) The hearing officer filed his order in June 2008. If the KDOL's interpretation is correct, this court must utilize the pre-amendment standard of review.

Research reveals only one Kansas Supreme Court decision applying K.S.A. 77-621(c)(7) after the July 1, 2009, amendment. Although factually dissimilar from this case, in *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 216 P.3d 170 (2009), the court acknowledged L. 2009, ch. 109, secs. 23-30 controlled its judicial review of state administrative agency actions. 289 Kan. 690, Syl. ¶ 1. However, the *Frick* court utilized the pre-amendment standard of review:

"The KJRA sets the standard of review on questions of fact when reviewing an agency's actions. It allows this court to grant relief if the agency's action is 'based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole.' K.S.A. 77-621(c)(7). Substantial competent evidence possesses both relevance and

substance and provides a substantial basis of fact from which the issues can be reasonably determined. [Citation omitted.] An appellate court views all the evidence in a light most favorable to the prevailing party, and it does not reweigh competing evidence or assess the credibility of witnesses. [Citation omitted.] This court must accept all evidence and inferences that support or tend to support the findings as true, and *this court must disregard all conflicting evidence.* [Citations omitted.]" (Emphasis added.) 289 Kan. at 709-10.

The *Frick* court did not employ the post-amendment expansion of "in light of the record as a whole" to its standard of review, as recent Kansas Court of Appeals cases have done even though it acknowledged the newly amended KJRA controlled its review. 289 Kan. at 697, 709-10. *Frick* provides the only guidance from the Kansas Supreme Court concerning the application of the newly amended K.S.A. 2009 Supp. 77-621(c)(7) to a pre-amendment agency decision. We are aware of the fact that other panels of this court have considered the amendment to K.S.A. 77-621(c)(7) as procedural, and have applied the amendment retroactively. Even if we were to apply the amendment retroactively, our decision would be unaffected.

Milano's argues substantial evidence did not support the factual determinations that (1) Milano's exercised control over the entertainers, and (2) the entertainers were Milano's employees within the meaning of K.S.A. 2008 Supp. 44-703(i)(3)(D). Milano's claims the hearing officer's order disregarded or omitted "more compelling factors" that indicated an absence of an employer-employee relationship.

Our Supreme Court has consistently reiterated there is no absolute rule to determine whether an individual is an independent contractor or an employee. Rather, this court must determine the individual's status based on the particular facts of each case. *Hartford*, 272 Kan. at 270. Although not the only factor, this court primarily examines whether the employer has the right of control and supervision over the alleged employee's work and the right to direct the manner or method in which the employee performs the work or the result of the work. *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 102-03, 689 P.2d 787 (1984).

The hearing officer cited Milano's nonnegotiable house rules, which regulated conduct among the entertainers and between the

entertainers and Club Orleans' customers. Milano's required each entertainer to complete an application and sign a performance agreement accepting the house rules.

The house rules stated that entertainers could not refuse drinks from Club Orleans' customers and prohibited entertainers from "work[ing] the crowd" around the stage area as another entertainer performed her routine on stage. If an entertainer violated a house rule, Club Orleans' management had the authority to impose fines or terminate the business relationship. Further, Milano's claimed in its house rules that Club Orleans' customers were its own and not the entertainers' customers.

Additionally, the house rules required an entertainer to impose an industry standard minimum tip for various dances so that an entertainer could not discount the rates she charged Club Orleans' customers. If a customer tipped an entertainer less than the minimum amount, or failed to provide a promised tip, Club Orleans' management would direct a Milano's employee, *i.e.*, a doorman, to discuss the issue with the customer and inform the customer that the behavior was unacceptable.

The hearing officer's order also noted that the entertainers incurred considerable business expense, including costumes, shoes, hair, nails, and plastic surgery. However, in exchange Milano's provided the entertainers with a stage, dressing room, showers, towels, soap, razors, feminine hygiene products, sound equipment, lighting, security, and a tanning bed.

Club Orleans allows the entertainers to choose what day and what shift to work, but Club Orleans' management determines in what sequence the entertainers perform on stage. Entertainers must be on the floor or on stage if a customer is in Club Orleans' building. Many of Milano's advertisements, including ads on the outside of the Club Orleans' building, billboards, and local newspapers, highlight the entertainers.

Moreover, Milano's house rules included several restrictions concerning the manner and method in which the entertainers perform. Milano's prohibited an entertainer from leaving the stage at any time during her three-song set. Entertainers are required to gather their personal effects and exit the stage as another enter-

tainer enters. Under the house rules, entertainers must notify Club Orleans' management of "rude, abusive, grabby or threatening" customers.

The record on appeal supports the finding that Milano's had the right to control the entertainers.

Next, Milano's argues that substantial evidence did not support the factual determination that the entertainers were Milano's employees within the meaning of K.S.A. 2008 Supp. 44-703(i)(3)(D). Milano's entire argument for this issue consists of the following sentence: "While the Order makes a finding of fact under 703(i)(3)(D) based upon its erroneous application of the spurious 'A-B test' that the entertainers are employees, Milano's has already shown that this fact finding is not supported by substantial evidence."

Milano's offers no authority for this assertion and provides no citation to facts in the record on appeal to support its claim. This court will presume factual statements not keyed to the record to be without support. *In re Dennis*, 286 Kan. 708, 722-23, 188 P.3d 1 (2008). Further, simply pressing a point without supporting authority, or without explaining why it is sound despite a lack of pertinent authority, is analogous to failing to brief an issue. *State v. Torres*, 280 Kan. 309, 321, 121 P.3d 429 (2005). Again, an issue not briefed by the appellant is deemed waived or abandoned. *Kingsley*, 288 Kan. at 395.

Affirmed.