NOT DESIGNATED FOR PUBLICATION

No. 113,113

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAROLD E. MILLER,
*Appellant*,

v.

BETHEL BAPTIST CHURCH,
and
CHURCH MUTUAL INSURANCE CO.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed September 18, 2015. Affirmed.

*Paul D. Post*, of Topeka, for appellant.

*Jeffrey A. Mullins*, of Mullins & McMillan, P.A., of Overland Park, for appellees.

Before PIERRON, P.J., MCANANY, J., and BURGESS, S.J.

*Per Curiam*: Darold E. Miller was injured in a chain saw accident while cutting down trees on the property of the Bethel Baptist Church (church). He sought workers compensation benefits. Both the Administrative Law Judge (ALJ) and the Workers Compensation Appeals Board (Board) found Miller was not an employee of the church and therefore did not fall within the purview of the Workers Compensation Act (Act). We agree that Miller was not an employee of the church.

Gaylerd Miller is a member of the church and also serves on the governing board for the church. He is the board member in charge of overseeing all the maintenance for

1

the church property. Gaylerd is also Miller's father. In April 2013, the board agreed to cut down two large trees that were hanging over a neighbor's property. The church could not afford to pay someone to remove the trees.

Gaylerd rounded up about 15 people to help cut down and remove the trees. Several people brought their own chain saws to help with the project. Gaylerd asked Miller if he would use his trucks to pull a trailer owned by Gaylerd to haul away the wood. Gaylerd selected the day the trees would be removed. Pastor Joe Tuttle provided lunch for the workers that day. Gaylerd told Miller he could have the wood since he was hauling it away.

The first day, Miller and the rest of the group cut down the trees and removed the wood. Miller was the only person who received the wood from the felled trees. Gaylerd told Miller and Jim Finney to cut the trees down, but he did not tell them how to do it or how to cut up the tree branches. No one from the church gave any training to Miller on how to cut down the trees. The church's business is not cutting down trees. Gaylerd testified that Miller was not an employee of the church at any time and in fact the church did not have any employees. The church did not provide any of the chainsaws or equipment. Pastor Tuttle provided gas for the trucks.

On the second day of trimming—approximately a week later—Miller, Gaylerd, and Pastor Tuttle met for lunch. Either Gaylerd or Pastor Tuttle told Miller they wanted the remaining stumps cut to the ground. Gaylerd and Miller went to the church. Miller cut his hand with a chainsaw as he attempted to cut one of the stumps. The saw kicked-back, caused Miller to lose his balance, and then the saw struck the fingers on Miller's right hand. Miller was taken to the emergency room and later had reparative surgery. Miller missed 6 weeks of work from his regular job. He has lingering grip and sensitivity issues in this right hand.

Miller testified he was not an employee of the church at the time. Rather, he was employed as a forklift driver for a distribution company. He is not a member of the church but attended on occasion. Miller said Gaylerd approached him about helping with the tree removal in exchange for the wood. Miller said he was at the church "to do a job" and was not in charge of supervising anyone. Miller did not pick the day to remove the trees. He owned both of the trucks used to haul the wood away. He also brought his own chainsaw. Miller estimated he had received 4 or 5 cords of wood from the trees with a value of $80-$120 a cord. Miller testified this was a one-time job and he did not have an ongoing relationship with the church. He said there were no set hours for the job, just that the job be completed.

In June 2013, Miller filed a workers compensation claim for the injuries to his right hand. Miller incurred over $50,000 in medical bills. Dr. Peter Bieri opined that Miller suffered a 34% permanent impairment to his right upper extremity. The church's insurance needs were provided by Church Mutual Insurance Company. The church's workers compensation policy does not contain an inclusion, amendment, or endorsement covering volunteers. On appeal, Miller does not challenge the policy or make a claim that he was not a volunteer. After discovery and a full hearing, the ALJ denied workers compensation benefits to Miller because he failed to prove the existence of an employer/employee relationship. The ALJ found that neither Miller nor Gaylerd considered Miller an employee of the church and there was never any intent to create an employment contract. Rather, the ALJ found the working relationship was that of an independent contractor, if anything at all, based on Miller using his own equipment and there was no evidence of the right of the church to control the method or manner of performing the work. The ALJ also stated that Miller was paid in-kind on a one-time basis with cords of wood and that such payment does not constitute "wages" under the religious entity language of K.S.A. 2014 Supp. 44-508(b). The Board agreed with the ALJ's analysis that Miller was an independent contractor and added: "[Miller] was simply doing his father a favor and agreed, along with 15 others, to cut down two trees and haul

3

away the wood. He was not an employee of the church." The Board did not address the ALJ's "wages" argument under K.S.A. 2014 Supp. 44-508(b) as a basis for its ruling, and the church has not raised that argument on appeal either. Miller appeals.

Miller argues both the ALJ and Board erred in finding that he was an independent contractor, not an employee of the church, and therefore not entitled to workers compensation benefits. This case presents a purely legal question of Miller's employment relationship with the church.

We review final orders of the Board under the Kansas Judicial Review Act (KJRA), K.S.A. 2014 Supp. 77-601 *et seq.*, as applied in K.S.A. 2014 Supp. 44-556(a). Our charge is to review the record as a whole to determine whether the Board's findings are supported to the appropriate standard of proof by substantial evidence. See K.S.A. 2014 Supp. 77-621(c)(7); K.S.A. 2014 Supp. 77-621(d). Pursuant to this standard, we (1) review the evidence both supporting and contradicting the Board's findings; (2) examine the presiding officer's credibility determinations, if any; and (3) review the Board's explanation as to why the evidence supports its findings. But this court does not reweigh the evidence or engage in de novo review. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010); K.S.A. 2014 Supp. 77-621(d).

Accordingly, we uphold the Board's findings when they are supported by substantial evidence in light of the record as a whole. See *Gustin v. Payless ShoeSource, Inc.*, 46 Kan. App. 2d 87, Syl. ¶ 1, 257 P.3d 1277 (2011). A panel of this court has persuasively noted that an appellate court has a duty to uphold the Board's findings if supported by substantial evidence "even if other evidence in the record would support a different conclusion." *Yarnell v. State*, No.109,751, 2013 WL 6168308, at * 2 (Kan. App. 2013) (unpublished opinion). Although not statutorily defined, substantial evidence refers to evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue

4

raised could be easily resolved. *Saylor v. Westar Energy, Inc.*, 292 Kan. 610, 614, 256 P.3d 828 (2011).

Under the KJRA, we may grant relief if we determine that the agency has erroneously interpreted or applied the law. K.S.A. 2014 Supp. 77-621(c)(4). This court determines questions of law under an unlimited review. *Fischer v. Kansas Dept. of SRS*, 271 Kan. 167, 175-76, 21 P.3d 509 (2001). Likewise, to the extent that this appeal presents questions of statutory interpretation, we also exercise unlimited appellate review. *Redd*, 291 Kan. at 187.

Claimants have the burden of proof to establish their right to an award of compensation under the Act and to prove the various conditions on which their right depends. See K.S.A. 2014 Supp. 44-501b(c). "'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2014 Supp. 44-508(h).

Although not defined in the Act, the Kansas courts have consistently defined an independent contractor as one who, in exercising an independent employment, contracts to do certain work according to his or her own methods, without being subject to the control of the party he or she contracts with, except as to the results or product of his or her own work. *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991); *Krug v. Sutton*, 189 Kan. 96, 98, 366 P.2d 798 (1961). There is no absolute rule for determining whether one is an independent contractor or an employee. Generally, each case must be determined on its own facts. See *Hartford Underwriters, Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 270, 32 P.3d 1146 (2001).

There are some well-recognized tests which courts have used in determining whether one is an independent contractor or an employee. Our Supreme Court has held

5

that the principal test is based upon the control exercised: Who has the right to direct what work will be done and when and how the work will be performed? This test is commonly referred to as the "right of control" test. *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 831-32, 752 P.2d 653 (1988). Kansas courts continue to use this right of control test in determining the relationship of the party rendering the service:

> "[The test is] whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor." *Falls*, 249 Kan. at 64.

On appeal, Miller argues he was an employee of the church, not an independent contractor. He had no control over the 15 volunteers who helped remove the wood. He did not set the date and time to remove the trees, and he was working under the supervision of Gaylerd and Pastor Tuttle. He states it is undisputed that he was specifically instructed by Pastor Tuttle or Gaylerd to cut the stumps as close to the ground as possible. Miller argues he received wages in the form of wood from the fallen trees and no other person involved received any type of payment or compensation. Since he had no control over the job, Miller argues there is no way he was an independent contractor.

The right of control test is not the end-all factor in identifying the employment relationship. We will examine several of the relevant factors outlined by multiple cases, including *Hartford Underwriters Ins. Co.,* 272 Kan. at 271; *Hill v. Kansas Dept. of Labor*, 42 Kan. App. 2d 215, 222-23, 210 P.3d 647 (2009): and *Crawford v. Kansas Dept. of Human Resources*, 17 Kan. App. 2d 707, 710, 845 P.2d 703 (1989), *rev. denied* 246 Kan. 766 (1990).

6

*The Existence of the Right of the Employer to Require Compliance with Instructions*

Miller states he believed he could be terminated and had no choice but to stay until the job was completed. He also followed the specific instructions in cutting the stumps to the ground. We find the church instructed Miller to cut down the trees, remove the fallen branches, and cut the stumps to the ground. Miller was given a job to do, not instructed on how to do the job. Any direction given to Miller was as to the result to be accomplished.

*The Extent of Any Training Provided by the Employer*

The church provided no training for Miller in how to cut down the trees, remove the branches, or cut the stumps to the ground.

*The Degree of Integration of the Worker's Services into the Business of the Employer*

The business of the church is not the removal of trees. Consequently, the job of cutting down the trees, removing the branches, and cutting the stumps to the ground has little, if any, degree of integration into the business of the church.

*The Requirement That the Services Be Provided Personally by the Worker*

Miller was asked to personally cut down the trees, but he was not directed to supervise the church volunteers. Miller was also asked to provide the trucks to remove the wood. Miller could keep the wood.

*The Existence of Hiring, Supervising, and Paying Assistants by the Worker*

Miller did not select the volunteers or pay them for their work in cutting down the trees or loading the wood on the trucks. No one assisted Miller in cutting the stumps to the ground. Miller did not hire, supervise, or pay any of the volunteers.

*The Existence of a Continuing Relationship between the Worker and the Employer*

The church did not have a continuing relationship with Miller. There was no previous working relationship between Miller and the church. There was no written employment contract entered by Miller. The oral agreement was for Miller to help cut down the trees and then with the help of church volunteers to load the wood onto two trucks and a trailer provided by Miller and Gaylerd. Miller later agreed to cut the stumps down to the ground to finish the job. This was a one-time job. There was no expectation or idea Miller would have additional tree removal or other jobs for the church.

*The Degree of Establishment of Set Work Hours*

Miller argues the church set the work hours for this project. Miller had no set work hours in working for the church for this project or for any other work for the church.

*The Requirement of Full-Time Work*

Miller worked on this project in his time off from his regular job as a forklift operator. Miller's involvement in this project was all day for the first day and then 1 hour the second day before he was injured.

*The Degree of Performance of Work on the Employer's Premises*

All the work was performed on the church's property.

*The Degree to Which the Employer Sets the Order and Sequence of Work*

Miller argues the project was orchestrated by the church and its board members, not him. The work days and times were set by the church.

*Whether Payment Is by the Hour, Day, or Job*

Miller claims the manner of payment was by output, not the job. Miller argues the ALJ's reliance on no "fixed price" for the job weighs in his favor. However, he states the exact amount of wood was unknown and there was no discussion of the value of the wood. Miller received payment in the form of the wood to burn at his home. He was the only person who received any form of payment. He was paid by the job. He received all the wood that he and the church volunteers loaded onto the trucks and trailer.

*The Extent to Which the Employer Pays Business or Travel Expenses of the Worker*

Pastor Tuttle bought Miller's lunch both days he worked for the church and bought gasoline for Miller's trucks.

*The Degree to Which the Employer Furnishes Tools, Equipment, and Material*

Miller provided his own trucks, trailer, and chainsaw for the job. The trailer was jointly used by both Miller and Gaylerd in agricultural pursuits.

*Whether the Employer Has the Right to Discharge or Terminate the Worker*

Miller argues both he and the church said he could be fired or terminated at any time without incurring liability. Miller claimed he could be fired if he did not do the work as instructed and he did not feel free to leave the job until it was done.

9

The Kansas Court of Appeals has also considered the factors set out in the Restatement (Second) of Agency § 220(2) (1957), as relied upon by the court in *Knorp v. Albert*, 29 Kan. App. 2d 509, 514, 28 P.3d 1024, *rev. denied* 272 Kan. 1418 (2001). We will also discuss the relevant factors from the Restatement.

*The Extent of Control Which, by the Agreement, the Master May Exercise Over the Details of the Work*

Miller argues there is no evidence he had any authority over the progress of the work. He contends he was under the direction of Gaylerd and Pastor Tuttle as the designated board members of the church in charge of the project. Miller states he had no control over the church volunteers. He did not set the date and time for removal of the trees. Miller argues he did not volunteer for the job because he agreed to do it for the payment in wood to heat his house. Miller states he had no responsibility for completion of the project. Miller argues one of the most important facts is that either Pastor Tuttle or Gaylerd specifically instructed him to cut the stumps as close to the ground as possible. Then, he was hurt when he followed these precise instructions.

We find there is no evidence the church had or exercised any control or supervision over the work performed by Miller. Miller testified he was not instructed on how to do the job and the church did not provide any supervision while he performed the work. Both Miller and Gaylerd testified that Miller cut the wood on his own, in his own way, and was not supervised by the church. They said that Miller was responsible for doing the work as he saw fit. The ALJ found there was no evidence to support a finding that the church controlled the method and manner of work performed by Miller. There is substantial evidence to support this finding.

*Whether the One Employed Is Engaged in a Distinct Occupation or Business*

Miller is not a professional woodcutter, and any wood cutting he did was for wood to heat his house.

*The Method of Payment, Whether by the Time or by the Job*

Miller was paid by the job. He received all the wood from the trees. He was not paid by the output of his work, but rather he received all the wood that was loaded by him and the volunteers into the trucks and trailer. Further, the church did not withhold social security or income tax from Miller's compensation. See *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 101, 689 P.2d 787 (1984).

*Whether the Work Is a Part of the Regular Business of the Employer*

The church is not in the regular business of cutting down trees. Likewise, Miller is not a professional tree trimmer but only cuts wood to heat his house during the winter.

*Whether the Parties Believe They Are Creating the Relation of Master and Servant*

The evidence in this case clearly establishes the parties did not believe they were creating an employer/employee relationship. Additionally, there is undisputed evidence that the church did not have any employees. *Knoble v. National Carriers, Inc.*, 212 Kan. 331, 337, 510 P.2d 1274 (1973) ("[T]he relationship of contracting parties depends on all the operative facts; the label which they choose to employ is only one of those . . . facts.").

In addition to the above factors, Miller relies on *Jones v. City of Dodge City*, 194 Kan. 777, 402 P.2d 108 (1965), in support of his argument that he was an employee of the church and entitled to workers compensation benefits. Jones, a 63-year-old man, was

a general carpenter who had worked mostly on his own. Mike Gebhart, manager of the Dodge City airport, lived in a dwelling at the airport owned and furnished to him by the city. The ceiling over the stairway into the basement of the residence needed repair. Gebhart called Dwight Holland, manager of the T. M. Deal Lumber Company, of Dodge City. Holland eventually sent Jones to talk to Gebhart. Gebhart told Jones he wanted the wall and ceiling sheet rocked and finished. Jones was instructed to purchase all the materials on the City's account at T. M. Deal Lumber Company. Nothing was said about wages. Gebhart did not see Jones again until after he was hurt.

Jones followed instructions, ordered the materials, and began working on the project. Jones got another man who was an employee of the lumber company to help him with the ceiling. Jones used his own tools and equipment in doing the work. While installing the sheet rock, Jones slipped and fell off the scaffolding and injured his hip and right leg. Jones filed for workers compensation benefits, and the critical question was whether he was an employee of the city. Both the district court and Kansas Supreme Court found Jones was an employee. 194 Kan. at 777, 782.

The *Jones* court relied on the right of control and supervision of the work as the primary tests. 194 Kan. at 780. The *Jones* court found Gebhart gave Jones specific instructions and told him to charge all the materials on the city's account. Gebhart testified he would have told Jones if he was doing the job wrong, and Jones agreed that Gebhart could have told him how to do the sheet rocking. The city clerk considered the materials purchased at the lumber company to be paid for by a city employee. Jones thought he was working for the City and Gebhart was his boss. 194 Kan. at 780.

The main factor relied upon by the *Jones* court was that Gebhart still reserved the right to control the method and means of doing the work and Jones was at all time subject to any instruction or direction from Gebhart concerning the work. Gebhart could have terminated Jones at any time, and there was no agreement as to the specific result of the

12

work. One additional fact was Jones' testimony that he charged by the hour for his services, not by the job and that was "indicative, though not conclusive, of an employer-employee relationship." 194 Kan. at 781.

We agree with the church that the *Jones* court applied the correct test for determining whether the relationship was one of an employee or an independent contractor. However, the *Jones* court specifically recognized the factual nature and the case-by-case determination necessary in these types of cases. 194 Kan. at 780 ("The determination of the relation in each instance depends upon the individual circumstances of the particular case."). *Jones* does not change the standard for determining employee or independent contractor status and continues a long line of Kansas cases confirming the right to control test. 194 Kan. at 780. We apply the *Jones* standard but to a different result.

Kansas courts have found independent contractor status when the purported employer gave the hired worker general instructions to follow but did not control the means and manner of the work. In *Home Design, Inc. v. Kansas Dept. of Human Resources*, 27 Kan. App. 2d 242, 2 P.3d 789 (2000), the court held that the siding installers were independent contractors. The court noted that the siding installers were free to set their own hours as long as the job was completed within a reasonable time frame (with only the minimal requirement that they should be there at a decent time, in decent clothes, and put in a day's work). They were paid by the job and free to turn down work, work for other siding companies, or negotiate better deals. There was not continuity in the relationship between Home Design and the installers; the installers could refuse to accept a relationship or an assignment as they desired. Home Design provided the siding materials for the job but did not provide the tools, equipment, or training to the installers. The siding installers had to carry liability insurance and workers compensation insurance but could be added to Home Design's policies for a fee. 27 Kan. App. 2d at 244-47.

13

The *Home Design* court held that the general instructions given to the installers "were nothing more than what would be expected of any subcontractor working under the overall auspices of a general contractor." 27 Kan. App. 2d at 246. There was no evidence that Home Design actually controlled the work of the siding installers or instructed them on how to perform their task or install the siding. The court explained that Home Design or one of its salespersons visited the job site to check the progress and address any problems the siding installers were encountering, but the company did not supervise the siding jobs in the true sense of the word. Checking the job site for progress or problems, the court reasoned, was typical of any general contractor or architect. Accordingly, the court held that the siding installers were not subject to Home Design's control in any meaningful sense other than as to results. 27 Kan. App. 2d at 247.

Here, it is our opinion that when measured by the foregoing standards, the recorded evidence sufficiently supported the findings adopted by the ALJ and Board. Ample substantial competent evidence in the record before us, as echoed in the factual findings below, demonstrates that the church did not possess a right of control over Miller in his completion of the job of cutting down the trees, loading them into his truck and trailer, and cutting the stumps to the ground. There were no conditions of his employment or rules regarding completion of the job. An independent contractor is one who, in the exercise of an independent employment, contracts to do a piece of work according to his or her own methods and who is subject to his or her employer's control only as to the end product or final result of his or her work. See *Falls*, 249 Kan. at 64. The evidence, therefore, leads to one reasonable inference, *i.e.*, Miller was an independent contractor and is not entitled to workers compensation.

Affirmed.

14