(6 P.3d 421)

No. 83,699

STEVE MARLEY, *Appellee,* v. M. BRUENGER & COMPANY, INC., and THOMAS MCGEE, L.C., *Appellants.*

Opinion filed May 5, 2000.

*Kirby A. Vernon* and *Janell Jenkins Foster,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for the appellants.

*Kelly W. Johnston,* of The Johnston Law Offices, P.A., of Wichita, for the appellee.

Before ELLIOTT, P.J., LEWIS, J., and BUCHELE, S.J.

LEWIS, J.: Respondent, M. Bruenger & Company, Inc., appeals from a decision by the Workers Compensation Board (Board) in favor of claimant Steve Marley.

There is no question that claimant sustained an accidental injury while in the course of his duties while under an agreement with respondent. The question on appeal is whether claimant was an employee of respondent or an independent contractor at the time of his injuries. The administrative law judge (ALJ) found claimant to have been an independent contractor and denied him workers compensation benefits. On appeal, the Board reversed the decision of the ALJ and held that claimant was an employee of respondent and entitled to workers compensation benefits.

We conclude that under the facts of this case, claimant was estopped from denying he was an independent contractor working under an agreement with respondent. We reverse the decision of the Board and reinstate the judgment of the ALJ that claimant was an independent contractor and not entitled to workers compensation benefits.

The facts indicate that claimant was an over-the-road truck driver who owned his own tractor at the time he entered into a relationship with respondent. The record indicates that claimant had also owned a trailer but had disposed of it prior to entering into a relationship with respondent. Claimant operated his trucking business under the name of S & J Trucking, which was a partnership between claimant and his wife.

At the time claimant entered into his relationship with respondent, he had been in the trucking business for a number of years and had been involved in a variety of other jobs as well.

The relationship between claimant and respondent was defined by a written agreement entered into and signed by both parties. This agreement was labeled "Contractor Transportation Agreement" and was signed by claimant and his wife, as well as by respondent. The agreement in question is eight pages long and goes into considerable detail concerning the terms and conditions of the relationship between claimant and respondent. Among other things, the agreement provided the following:

> "This Agreement shall be governed by the laws of the State of Kansas, both as to interpretation and performance. *The parties intend to create by this Agreement the relationship of Carrier and Independent Contractor and not an Employer-Employee relationship or subcontractor. Neither the Contractor nor its employees are to be considered employees of the Carrier at any time under any circumstances or for any purpose.* Neither party is the agent of the other and neither party shall have the right to bind the other by contract or otherwise except as herein specifically provided." (Emphasis added.)

The agreement also specifically dealt with the question of workers compensation as follows: "The Contractor shall, at all times during the term of this Agreement carry workers compensation coverage on himself or any employees or if there are no employees, *the Contractor has the option of obtaining coverage through a*

*workers compensation policy or through the Carrier's Truckers Occupational Accident Insurance."* (Emphasis added.)

The record shows that claimant, pursuant to the provisions of the agreement immediately set out above, decided to avail himself of the "Carrier's Truckers Occupational Accident Insurance." Claimant applied for this insurance on a written application form which was provided to him by respondent. This application was signed by claimant and contains the following certification: "Certification: I hereby certify that I am an independent owner operator under lease to the above named trucking company. *I am not an employee of the above named trucking company."* (Emphasis added.)

The insurance policy which was issued to claimant provides that those eligible for the insurance provided are: "All active, full-time Independent Contractors under age 70 under contract with the Holder to provide truck driving service to the Holder. Independent Contractors under age 70 of Independent Contractors are also eligible for coverage."

The policy was to take effect on "[t]he date the eligible person becomes an Independent Contractor for the Holder."

Although counsel for claimant now denounces the insurance applied for by claimant as "illegal," claimant took full advantage of the policy. After claimant was injured, he applied for benefits under the policy described above and was paid $8,757.13 in medical benefits and $31,199.94 in disability benefits. Claimant would not have been eligible to receive these payments from the insurance company if he had not been an independent contractor at the time he suffered his injuries.

Despite having agreed that he would be an independent contractor and despite having certified to the insurance company that he was an independent contractor, claimant now seeks to change his position and argues he was not an independent contractor but only an employee of respondent. We assume claimant takes this approach for the very understandable reason that he could collect money through workers compensation benefits. However, he has already collected nearly $40,000 from an insurance company based on his certification that he was an independent contractor and not

an employee. This is a blatant change of position by claimant regarding his relationship with respondent. The law will not permit such inconsistency in claims on the part of claimant.

Claimant obtained his position with respondent by agreeing he would be an independent contractor. It is true there were other applications signed by claimant and other documents given to claimant, but the basic agreement between claimant and respondent is one in which claimant agrees he is an independent contractor. In addition, claimant obtained insurance coverage and approximately $40,000 in benefits by maintaining he was an independent contractor and by certifying he was not an employee of respondent. Respondent and the insurance company relied on the representations of claimant that he was an independent contractor. As near as we can tell, claimant continued to insist he was an independent contractor until he had collected all the insurance money available to him under his agreement with respondent.

For many years in this state, the law has employed equitable estoppel to prevent litigants from maintaining inconsistent positions concerning transactions that end up being litigated. For instance, in *Bowen v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978), we find the following:

"The plaintiffs pled that defendants were estopped to take advantage of the statute. The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (*Maurer v. J.C. Nichols Co.*, 207 Kan. 315, 485 P.2d 174 [1971].)

"This court has further said:

" 'The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction.' (*Browning v. Lefevre*, 191 Kan. 397, Syl. ¶ 2, 381 P.2d 524 [1963].)

' ". . . One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement. . . .' (*In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976].)

' ". . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must

show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. . . .' (*United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977].)"

We do not believe that it should be permissible for a claimant in a workers compensation action to change his or her position to claim he or she was an employee of the respondent at the time of the injury where the claimant has previously taken advantage of his or her representation that he or she is an independent contractor and not an employee. The law does not permit such an inconsistency in positions, and the doctrine of equitable estoppel may be employed to enforce this concept. Accordingly, we hold claimant is estopped to deny he was an independent contractor at the time of his injury and, as a result, he is not entitled to workers compensation benefits. We do not hesitate to employ the doctrine of equitable estoppel in a workers compensation proceeding and have, in fact, stated that such action is permissible. See *Scott v. Wolf Creek Nuclear Operating Corp.*, 23 Kan. App. 2d 156, 162-63, 928 P.2d 109 (1996).

This is not a case in which the bargaining positions of the parties were widely divergent. Claimant was an individual with considerable trucking and business experience who owned his own tractor and trailer and had been operating as an over-the-road trucker for some period of time. Respondent is a large company which employs both independent contractors and hires employees to drive its own trucks. We think respondent was entitled to rely on the representations of claimant that he would be treated as an independent contractor.

Our decision is not inconsistent with those cases which hold that "the relationship of contracting parties depends on *all* the operative facts; the label which they choose to employ is only one of those facts." *Knoble v. National Carriers, Inc.*, 212 Kan. 331, 337, 510 P.2d 1274 (1973). Our decision is not based upon whether the parties' relationship was, factually, that of contractor/independent contractor or employer/employee. This decision is based on the

inconsistency of the representations maintained by claimant concerning his status at the time of his injury and on the fact that claimant has benefitted substantially from claiming to have been an independent contractor and now seeks to benefit even further by claiming he was an employee. We are not impressed by claimant's assertion that he did not read anything he signed. We assume that any party who has signed an agreement has read it and understands it. Claimant will not be permitted to recover financial benefits from the same accident by claiming on the one hand that he was an independent contractor and on the other that he was an employee.

In closing, we note that on the merits we believe the evidence supports the decision of the ALJ and not that of the Board. The record shows that in addition to the agreement between the parties, claimant was to be paid a percentage of the gross revenue for the load hauled and not by the hour. He was given a 1099 by respondent for his earnings, not a W-2 form, and claimant admits he treated the income from respondent as self-employment income on his tax return. Claimant was responsible for all fuel, repairs, and maintenance on his tractor and was permitted to choose his own route in hauling a load. Those areas of control cited by the Board to support its decision that claimant was an employee are all the result of the highly regulated nature of the trucking business and are simply not inconsistent with the independent contractor status under the agreement of the parties.

Our decision, however, is based on equitable estoppel. Our conclusion that claimant is estopped from denying his independent contractor status requires that we reverse the decision of the Board and reinstate the decision of the ALJ to the effect that claimant was an independent contractor and not entitled to workers compensation benefits.

Reversed.