No. 94,451

PMA GROUP and AEROFLEX, INC., *Appellants*, v. DEAH TROTTER, *Appellee.*

(135 P.3d 1244)

Opinion filed June 16, 2006.

*Patrick J. Murphy*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, argued the cause, and *Dwight D. Fischer* and *Janell Jenkins Foster*, of the same firm, were on the brief for appellants.

*Troy H. Gott*, of Patterson, Gott & Burk, L.C., of Wichita, argued the cause, and *Travis J. Burk*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Deah Trotter was struck by a car driven by a coworker, La Ied Kirkpatrick, in the parking lot of their employer, Aeroflex, Inc. (Aeroflex). Trotter accepted workers compensation benefits from Aeroflex and its insurer, PMA Group (PMA). Trotter and Aeroflex and PMA filed a negligence action against Kirkpa-

trick. Without asserting a workers compensation defense, Allstate Insurance Company (Allstate), Kirkpatrick's insurer, entered into a settlement agreement with Trotter to pay her the policy limits. Aeroflex and PMA intervened in Trotter's action to assert their subrogation rights. The district court realigned the parties, making Aeroflex and PMA the plaintiffs and Trotter the defendant. The district court rejected plaintiffs' subrogation claim and ordered the settlement proceeds distributed to Trotter. Aeroflex and PMA appeal.

The case was transferred from the Court of Appeals by the authority of K.S.A. 20-3018(c).

In his order granting Trotter's motion to disburse the settlement proceeds to her, the trial judge made findings of fact, which have not been challenged by the parties. The following numbered paragraphs are based on the trial court's findings:

1. On December 11, 2002, Trotter was walking to her vehicle in Aeroflex's parking lot when her coworker, La Ied Kirkpatrick, backed her car over Trotter's right foot and ankle.

2. As a result of her coworker's negligence, Trotter suffered numerous injuries to her right foot and ankle that have so far required five surgeries. At the time of the trial court's order, a sixth surgery was scheduled. Aeroflex and PMA have paid workers compensation benefits to Trotter. At the time of the trial court's order, the workers compensation benefits totaled over $113,000 and the plaintiffs were continuing to pay.

3. On or about January 24, 2003, Aeroflex and PMA's agent, Gallagher Bassett Services, Inc., sent a letter to Kirkpatrick. The letter informed Kirkpatrick that her negligence had caused the injuries to Trotter, plaintiffs were paying workers compensation benefits to Trotter, and plaintiffs were claiming a subrogation lien against Kirkpatrick for all monies that they may be required to spend in discharging their obligations under the provisions of the Workers Compensation Act. Aeroflex and PMA suggested that Kirkpatrick turn the matter over to the appropriate insurance carrier.

4. Allstate insured Kirkpatrick and the automobile she was driving on the day of the accident. Allstate, on behalf of Kirkpatrick,

offered to pay its policy limits of $100,000. Allstate also told Trotter that she needed to talk to Aeroflex and PMA to determine whether they were claiming a workers compensation subrogation lien and, if so, the amount.

5. Trotter talked to Aeroflex and PMA, both of whom claimed a workers compensation subrogation lien and asserted they were entitled to all the settlement proceeds. Aeroflex and PMA retained counsel, as did Trotter.

6. On December 9, 2004, Aeroflex and PMA filed suit against Kirkpatrick. Their counsel alleged that he also represented Trotter. The petition alleged that Kirkpatrick's negligence caused Trotter's injuries, that Kirkpatrick was Trotter's coworker and the accident occurred on the employer's premises, and that Trotter suffered damages in excess of $75,000. The action was dismissed on February 22, 2005.

7. Also on December 9, 2004, Trotter's counsel filed a similar petition naming Kirkpatrick as the defendant.

8. On December 24, 2004, Trotter signed a Release of Kirkpatrick from all liability in exchange for payment of $100,000, the limits of the Allstate policy.

9. On January 14, 2005, Aeroflex and PMA filed to intervene in Trotter's action. The trial court permitted them to intervene on January 21, 2005.

10. On February 8, 2005, Kirkpatrick was dismissed and the parties were realigned so that Aeroflex and PMA are plaintiffs and Trotter is the defendant.

The trial court concluded that K.S.A. 44-504(b) only permits an employer to have a subrogation lien if a recovery of money, by settlement or verdict, is from some "other person." The trial court further concluded that, because some "other person" is defined in K.S.A. 44-504(a) as someone other than a coworker or employer of the injured party and Kirkpatrick was Trotter's coworker, Aeroflex and PMA have no subrogation lien.

K.S.A. 2005 Supp. 44-501(a) provides in part:

"If in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to an

employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act."

K.S.A. 2005 Supp. 44-501(b) provides: "Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act. . . ." K.S.A. 44-504(a) and (b) authorize a worker's remedy against a negligent third party and an employer's subrogation:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid. Such action against the other party, if prosecuted by the worker, must be instituted within one year from the date of the injury and, if prosecuted by the dependents or personal representatives of a deceased worker, must be instituted within 18 months from the date of such injury."

The trial court reasoned that, because K.S.A. 44-504 is inapplicable to a worker's remedy against a negligent coworker, it likewise is inapplicable for the purpose of creating an employer's subrogation lien against an amount recovered by a worker from a coworker.

The issue before this court is whether the trial court's interpretation of the statute was erroneous. Interpretation of a statute is a question of law over which an appellate court exercises unlimited review. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

On appeal, Aeroflex and PMA argue that the trial court's ruling gave Trotter a double recovery contrary to the express language of the Workers Compensation Act, the public policy it codifies, and the case law interpreting it. Appellants cite and quote from several cases containing statements against double recoveries in workers compensation cases. None of the cases, however, are controlling in the present case.

Appellants quote the following from *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 200-01, 708 P.2d 533 (1985), *overruled in part on other grounds by Murphy v. IBP, Inc.*, 240 Kan. 141, 727 P.2d 468 (1986): "The purpose of K.S.A. 44-504 is to ensure that the injured worker does not receive a double recovery. The employer should be reimbursed only from that portion of a settlement or judgment that would be compensable under the act. That is the intent of the legislature." *Houston* is factually distinguishable from the present case in that the worker was not injured by a coworker. And, when viewed in context, the language quoted by Aeroflex and PMA offers only dubious support for appellants' position. The language is from a concurring and dissenting opinion that would limit the employer's right to subrogation. The majority in *Houston* affirmed the trial court's denial of an injured highway patrolman's request to recover claimed noncompensable personal losses attributable to the collision—sick pay, holiday pay, and personal property—off the top of a $40,000 lump sum settlement with the negligent third party, leaving the rest subject to subrogation. 238 Kan. at 195-96. The dissenters would have remanded the matter to the trial court with directions to limit the amount subject to subrogation to the portion that would be compensable under the Workers Compensation Act. 238 Kan. at 200-01.

This court has recognized that the legislature's intent in enacting 44-504 actually was two-fold: (1) to preserve an injured worker's claim against third-party tortfeasors and (2) to prevent double re-

coveries by insured workers. *Loucks v. Gallagher Woodsmall, Inc.*, 272 Kan. 710, Syl. ¶ 2, 35 P.3d 782 (2001). The trial judge's interpretation of 44-504 in the present case is consistent with the dual purposes of the statute.

Appellants also quote from *Deffenbaugh Industries, Inc. v. Wilcox*, 28 Kan. App. 2d 19, 24-25, 11 P.3d 98 (2000), *rev. denied* 270 Kan. 897 (2001):

" 'Subrogation is a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable.' *Western Surety Co. v. Loy*, 3 Kan. App. 2d 310, 312, 594 P.2d 257 (1979). More specifically, subrogation exists to prevent double recovery. For example, an injured employee cannot claim a right to both the workers compensation payments and the cause of action against a third party as this would violate the principle of indemnity by permitting double recovery. See generally Stempel, Law of Insurance Contract Disputes § 11.01 (2d ed. 1999). Instead, an employer receives reimbursement for the amount of its expenditures as a claim against the proceeds of a third-party recovery, and the employee gets the excess. K.S.A. 44-504(b); 6 Larson, Workers' Compensation Law § 117.01 [1] (2000)."

At issue in *Deffenbaugh* was the recovery of attorney fees under K.S.A. 44-504 where the employer and its workers compensation carrier waived their right to statutory subrogation by entering into an indemnity agreement with the third-party tortfeasor. It is factually distinct from the present case.

In response to appellants' assumption that Trotter's recovery would be double if she were permitted to retain the settlement proceeds, Trotter asserts that the damages for which she settled include a number of items not compensable under the Workers Compensation Act. She identifies future medical treatment, past and future pain and suffering, past and future wage loss, loss of consortium, and loss of services to her spouse as items of damages not compensable by workers compensation benefits. Trotter's petition against Kirkpatrick contains the following specification of damages:

"As a result of defendant's negligence, plaintiff suffered painful injuries to her right ankle and foot, as well as other injuries. She has had five surgeries on her right foot and ankle, and she is permanently disabled as a result of defendant's negligent conduct. Because of the severe injuries to her right ankle and foot, her

husband has suffered loss of consortium. She has suffered losses, all of which have continued and will continue into the future, all to her general and special loss and damage in amount in excess of $75,000 exclusive of interest and costs." . .

"[A] recovery that is not compensable under workers compensation is not subject to subrogation. Subrogation is not allowed because the award does not duplicate the compensation and medical aid provided by the employer." *McGranahan v. McGough*, 249 Kan. 328, 334, 820 P.2d 403 (1991). Pain and suffering is compensated for by workers compensation to the extent it interferes with the ability to perform labor, and the court has concluded "that pain and suffering is such an integral part of determining work disability that any recovery for pain and suffering is subject to the subrogation rights of an employer" under K.S.A. 44-504. 249 Kan. at 336. But loss of services to a spouse is not an item of compensation considered in making a workers compensation award. K.S.A. 44-504(b); 249 Kan. at 337. And there is provision for future compensation or medical aid in 44-504(b).

Aeroflex and PMA argue that the trial court failed to read K.S.A. 2005 Supp. 44-501 and K.S.A. 44-504 together, and they draw from those statutes the conclusion that, had Kirkpatrick been injured in the accident, her injuries as well as Trotter's would have been compensable under the Workers Compensation Act. Aeroflex and PMA cite *Blank v. Chawla*, 234 Kan. 975, 678 P.2d 162 (1984), as a case with facts similar to those of the present case. Both Blank and Chawla were Boeing employees. Blank was struck in the Boeing parking lot by a vehicle driven by Chawla. Boeing paid workers compensation benefits to Blank, who sued Chawla in negligence. Boeing intervened and appealed the trial court's entry of summary judgment in Chawla's favor, which was based on the rationale that Chawla was immune from civil liability under the Workers Compensation Act. The court stated:

"Here, had Chawla been injured in the same accident, under the same circumstances, he would have been entitled to recover under the Workmen's Compensation Act. In an action for damages by an injured party against his co-employee in which the exclusive remedy provision of the Workmen's Compensation Act is asserted as a defense, it is held: (1) a co-employee is immune only if he or she would have been entitled to receive workers' compensation had she or he been

injured in the same accident; and (2) since no genuine issues of material fact remained to be resolved, the trial court did not err in granting summary judgment." 234 Kan. at 982.

There is no question that Kirkpatrick would have been entitled to receive workers compensation had she been injured in the same accident with Trotter. But the obvious difference between *Blank* and the present case is that the defense that was asserted by Chawla's insurer was not asserted as a defense by Kirkpatrick's insurer. Thus, Chawla was immune from civil liability, but Kirkpatrick's insurer paid its policy limits to Trotter.

The key to appellants' position is their contention that Trotter "and Kirkpatrick, by virtue of their actions, are no longer 'co-employees' but are, in effect, an injured employee and a negligent third-party." In which case, according to Aeroflex and PMA, "subrogation by plaintiffs against the settlement proceeds is both appropriate and fair." The phrase "by virtue of their actions" presumably refers to Trotter's suing Kirkpatrick and Kirkpatrick's insurer's failing to assert the exclusive remedy of workers compensation as a defense. Appellants cite no authority for deeming Kirkpatrick relieved of her coworker status as a consequence of "their [Kirkpatrick and Trotter] actions." Such a conclusion defies both logic and common sense.

Trotter contends that 44-504 is plain and unambiguous. When a statute is plain and unambiguous, the court gives effect to the intention of the legislature as expressed. *Griffin v. Suzuki Motor Corp.*, 280 Kan. 447, 460, 124 P.3d 57 (2005). K.S.A. 44-504 gives the employer a right of subrogation where the injured worker makes a recovery from some person other than the employer or any person employed by the employer. Trotter notes that appellants have cited no exceptions to 44-504, no other statutes that apply, and no case law giving the employer and its carrier a right of subrogation against the proceeds of a settlement between the injured worker and a coworker.

According to Trotter, even if Aeroflex and PMA had a subrogation interest in the settlement proceeds, it would be extinguished by subsection (d) of K.S.A. 44-504, which provides:

"If the negligence of the worker's employer or those for whom the employer is responsible other than the injured worker, is found to have contributed to the party's injury, the employer's subrogation interest or credits against future payments of compensation and medical aid, as provided by this section, shall be diminished by the percentage of the recovery attributed to the negligence of the employer or those for whom the employer is responsible, other than the injured worker."

It is Trotter's position that Kirkpatrick was 100% at fault, which would reduce appellants' subrogation interest to nothing. From the record on appeal, however, it does not appear that the percentage of Kirkpatrick's fault has been adjudicated or otherwise established.

Aeroflex and PMA argue that Trotter is equitably estopped from asserting the fellow servant doctrine to defeat their subrogation lien because she got the settlement proceeds from Allstate by proceeding against Kirkpatrick as if the fellow servant doctrine did not apply. Appellants quote the following discussion of equitable estoppel from *Marley v. M. Bruenger & Co., Inc*, 27 Kan. App. 2d 501, 504-05, 6 P.3d 421, *rev. denied* 269 Kan. 933 (2000), which held that the doctrine of equitable estoppel was applicable to workers compensation proceedings:

"For many years in this state, the law has employed equitable estoppel to prevent litigants from maintaining inconsistent positions concerning transactions that end up being litigated. For instance, in *Bowen v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 (1978), we find the following:

'The plaintiffs pled that defendants were estopped to take advantage of the statute. The doctrine of equitable estoppel is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon. (*Maurer v. J.C. Nichols Co.*, 207 Kan. 315, 485 P.2d 174 [1971].)

'This court has further said:

"The doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction involved wholly inconsistent with his previous acts and business connection with such transaction." (*Browning v. Lefevre*, 191 Kan. 397, Syl. ¶ 2, 381 P.2d 524 [1963].)

"... One who asserts an estoppel must show some change in position in reliance on the adversary's misleading statement. . . .' (*In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976].)

". . . Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts . . . .' (*United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977].)' "

The problem with appellants' position is they have not shown they were induced by Trotter's acts or representations to believe that Kirkpatrick was anything other than Trotter's coworker. Thus, Aeroflex and PMA cannot show that they relied and acted upon the belief that Kirkpatrick was not Trotter's coworker. Aeroflex was the employer of Trotter and Kirkpatrick and knew better than Trotter that Kirkpatrick was her coworker. Areoflex and PMA filed, using Trotter's name, the first negligence action against Kirkpatrick. And they intervened in the negligence action filed by Trotter. Appellants did not rely on Trotter's conduct so that Trotter should be precluded from asserting her rights against them.

The facts of this case are readily distinguishable from those of *Marley*, where an injured truck driver collected nearly $40,000 from an insurance company on the strength of his certification that he was an independent contractor rather than an employee. Thus, the truck driver was precluded from claiming to be an employee in order to collect workers compensation benefits for the same injuries. 27 Kan. App. 2d at 503-04.

Aeroflex and PMA argue that Trotter's conduct is like that of the truck driver in *Marley*. Their argument is that Trotter behaved as if she had a right to a third-party recovery from Kirkpatrick until asserting the defense that she and Kirkpatrick were coworkers in order to defeat appellants' subrogation interest. But Trotter, unlike the truck driver, did not certify or even have to suggest that she had a right to a third-party recovery from Kirkpatrick in order to get workers compensation benefits. Trotter's right to workers compensation benefits was based on her undisputed employee status and her undisputedly being injured while on the employer's premises. Appellants do not specify what Trotter is supposed to have

done in behaving as if she had a right to a third-party recovery, but, if it was her filing of the negligence action against Kirkpatrick, Aeroflex and PMA behaved that way before Trotter did. For this reason, Trotter contends that, if anyone is to be equitably estopped, it ought to be appellants.

The basic flaw in Aeroflex and PMA's argument is that Allstate, notwithstanding a valid defense, settled with Trotter. That settlement did not create any right or interest in favor of Aeroflex and PMA. No matter how creative their arguments are, they cannot make something from nothing. Their arguments simply have no support in law, logic, or common sense.

Aeroflex and PMA, in the alternative, argue that the district court had no jurisdiction to disburse the settlement proceeds because the action was one at common law, while the distribution was governed by the Workers Compensation Act. At oral argument, Aeroflex and PMA informed the court that they had abandoned this argument.

The judgment of the district court is affirmed.