(253 P.3d 786)
No. 102,985

ERNESTO TREVIZO, *Appellee*, v. EL GAUCHO STEAKHOUSE, *Appellant*, CHRISTENSEN COMPANY, INC., *Appellee*, KANSAS RESTAURANT & HOSPITALITY ASSOCIATION, *Appellant*, and TRAVELERS, *Appellee*.

Opinion filed April 8, 2011.

*Dallas L. Rakestraw* and *Vincent A. Burnett*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellants.

*Lyndon W. Vix* and *William L. Townsley, III*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees.

Before HILL, P.J., GREEN, J., and BUKATY, S.J.

GREEN, J.: El Gaucho Steakhouse appeals from an order of the Workers Compensation Board (Board) concluding that El Gaucho

was liable for the injury of the claimant, Ernest Trevizo. Trevizo sustained the injury while constructing a table for the steakhouse. In reversing the order of the administrative law judge (ALJ), the Board determined that El Gaucho and its insurance carrier were liable for Trevizo's compensable injury. On appeal, El Gaucho argues that substantial competent evidence does not support the Board's order and that Max Christensen, and Christensen Company, Inc. (collectively Christensen), the purported general contractor for the construction of the restaurant, should be held responsible for Trevizo's injury. We disagree. Accordingly, we affirm the order of the Board.

*Underlying Facts*

In July 2007, Javier Sacco decided to start El Gaucho Steakhouse. Sacco found a location for his restaurant in an empty retail space owned by Mark Nordyke. Because the leased property consisted of only four walls, Nordyke and Sacco entered into an agreement: Nordyke agreed to construct the necessary infrastructure for the restaurant (walls, bathroom, floor, etc.) and Sacco would build those items needed for his specific purpose of running a restaurant (bar, interior decorations, etc.).

Nordyke hired Max Christensen as the general contractor for the completion of his construction responsibilities under his agreement with Sacco. Sacco also hired Christensen: Sacco hired Christensen as an architect. Sacco and Christensen entered into a written contract. The contract specifications were as follows:

"**PROPOSED FEE**

"We provide the following services:

"Pull permits, Oversee Construction quality with the subcontractors and call for inspections.

"Mechanical Engineering, Electrical Engineering and Architectural (With Auto Cad From Your Draftsman).

"Plumbing permit with your subcontractor and my quality control.

"Total                                        $11,000

"We have workman comp and liability insurance.

"Payment as follows:          $ 3,000.00    down

                               5,000.00    when plan complete and
                                            permit issued and

|  | 3,000.00 | balance when final |
|--|----------|--------------------|
|  |  | occupancy is issued. |

$11,000.00

"Thank You,
"Max Christensen"

Construction on El Gaucho Steakhouse began in June 2007. Soon afterward, in mid-July, Ernest Trevizo cut his finger with a saw while working on a table for the restaurant. Trevizo's right pinky finger was amputated as a result of the injury. Trevizo later applied for workers compensation benefits, naming El Gaucho Steakhouse or Christensen (or both) as his employer. Although El Gaucho Steakhouse is the appealing party, Sacco is the sole operator and primary owner of El Gaucho. As a result, any references to Sacco can collectively also be attributed to El Gaucho.

Sacco and Christensen gave divergent interpretations of their agreement. Moreover, both described different versions of Trevizo's course of employment. Sacco stated that Christensen acted as general contractor for Sacco's portion of the restaurant construction. In particular, Sacco noted that, for the most part, Christensen would contact the subcontractors for the work. Sacco, however, admitted that sometimes he would hire subcontractors on his own as a way to reduce cost. Moreover, Sacco stated that he, not Christensen, was paying all the subcontractors. Sacco characterized these payments as "advances" on behalf of Christensen. In addition, Sacco explained that he specifically requested Christensen have workers compensation insurance and that the written contract should indicate that fact.

With regards to Trevizo, Sacco testified that Daniel Zamora, the site foreman, hired Trevizo after he responded to a radio advertisement. According to Sacco, Zamora worked for himself, Christensen, and Nordyke. Nevertheless, Sacco paid for both Zamora's salary and the radio advertisement. Sacco also paid Trevizo's salary.

Christensen described the relationship differently. Christensen stated that Sacco retained complete control of the interior finish and design of the steakhouse. Christensen pointed out that his company was hired only to handle some aspects of the project. For

example, Christensen completed the plumbing, framing, and pouring the concrete for the floor. Nevertheless, Christensen stated that Sacco maintained control and responsibility for the project on which Trevizo worked: tiling the floors and building a table.

Christensen agreed that he was hired not only as an architect but also as the general contractor for Nordyke's construction responsibilities owed to Sacco. Nevertheless, in Christensen's view, their agreement and written contract was that Sacco would hire and pay for the subcontractors he needed to complete his construction duties. In fact, Christensen observed that he had little to no interaction with the day-to-day construction at the steakhouse. Rather, their agreement simply provided that Christensen would oversee the quality of the work—not the actual completion of the project.

Trevizo's testimony was consistent with Christensen's testimony. He maintained that he was hired by Sacco to tile the floor and, when he finished the floor, he began framing work. Trevizo indicated that he worked only for Sacco: the person who set his salary and who agreed to pay him. Moreover, Trevizo stated that he never met Christensen. Trevizo would take orders from Sacco on a daily basis. Trevizo's pay stubs, which were checks drawn on El Gaucho Steakhouse's account, were admitted into evidence.

*Administrative Proceedings*

The first issue before the ALJ (and the sole issue here on appeal) was whether Sacco and his insurance company, the Kansas Restaurant and Hospitality Association (KHRA), or Christensen, and his insurance company, Travelers, was responsible to pay any workers compensation award given to Trevizo. Relying on the written agreement between Sacco and Christensen, the ALJ concluded that Christensen was the general contractor for the project. In the ALJ's opinion, this made "it clear that the Christensen Company had oversight over [Trevizo's] work, and responsibility for the Workers Compensation Insurance."

Based on this finding, along with other medical evidence, the ALJ ordered Christensen to pay an award to Trevizo for temporary total disability compensation in the amount of $10,754.02. Chris-

tensen requested a review by the Board, specifically on whether Trevizo's injury arose out of his employment with Christensen.

The Board reversed the ALJ's determination that Trevizo was an employee of Christensen. The Board found that Trevizo was an employee of El Gaucho when the accident occurred. Moreover, the Board determined that Trevizo was neither performing work that Christensen was responsible for, nor working for a subcontractor of Christensen's. As a result, the Board reversed the ALJ's determinations and found El Gaucho responsible for all of Trevizo's award.

At issue is whether El Gaucho should be held responsible for paying the compensation award to Treviso.

*Does Substantial Competent Evidence Support the Board's Finding that El Gaucho, Rather than Christensen, is Liable for Trevizo's Workplace Injury?*

*Standard of Review*

El Gaucho presents a multi-layered challenge to the Board's order. This court reviews the Board's order under the instruction of the Kansas Judicial Review Act (KJRA). See K.S.A. 2010 Supp. 44-556(a). Because the Board's order was issued after July 1, 2009, the amended KJRA controls our review of this appeal. See *Redd v. Kansas Truck Center*, 291 Kan. 176, 182-83, 239 P.3d 66 (2010).

Moreover, El Gaucho's appeal challenges both the Board's factual findings and legal conclusions. When reviewing the Board's factual findings, the amended KJRA does not alter the long-standing rule that our court looks at the factual findings to be sure they are supported by substantial competent evidence, in light of the record as a whole. K.S.A. 2010 Supp. 77-621(c)(7); *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 362, 212 P.3d 236 (2009). Nevertheless, as amended, the KJRA expands the breadth of evidence that our court must consider when looking at the record as a whole. See K.S.A. 2010 Supp. 77-621(d). As explained by our Supreme Court in *Redd*, the KJRA "now alters an appellate court's analysis in three ways: (1) It requires review of the evidence both supporting and contradicting the Board's findings; (2) it requires an examination of the presiding officer's cred-

ibility determination, if any; and (3) it requires review of the agency's explanation as to why the evidence supports its findings." 291 Kan. at 182. Nevertheless, our court does not reweigh evidence or engage in de novo review of the agency's factual findings. K.S.A. 2010 Supp. 77-621(d).

Substantial competent evidence is evidence of substance and relevant consequence, carrying a fitness to induce conviction that the award is proper or furnishing a substantial basis of fact for reasonably resolving the issue. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007).

El Gaucho also challenges the Board's legal determinations. Under the KJRA, our court may grant relief if we determine that the agency has erroneously interpreted or applied the law. K.S.A. 2010 Supp. 77-621(c)(4). This court determines questions of law under an unlimited review. *Fischer v. Kansas Dept. of SRS*, 271 Kan. 167, 175-76, 21 P.3d 501 (2001). Likewise, to the extent that this appeal presents questions of statutory interpretation, we also exercise unlimited appellate review. *Redd*, 291 Kan. at 187.

Before addressing El Gaucho's arguments, it is first necessary to put its arguments in the context of the Board's order—which found that Trevizo was an employee of El Gaucho. Although El Gaucho does not seem to dispute this finding, we will consider whether substantial evidence existed to support the Board's finding that Trevizo was an employee of El Gaucho. The Kansas Workers Compensation Act (Act) applies when an employee is injured by "accident arising out of and in the course of employment." K.S.A. 2010 Supp. 44-501(a). K.S.A. 2010 Supp. 44-508(b) defines "[w]orkman," "employee," or "worker" as "any person who has entered into the employment of or works under any contract for services . . . with an employer . . . [except] individual employers . . . or self-employed persons." Kansas courts have identified an employer's right to control the employee as the primary test to use in determining whether an employee-employer relationship existed between the parties:

"[The test is] whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It

is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. [Citation omitted.]" *Falls v. Scott*, 249 Kan. 54, 64, 815 P.2d 1104 (1991).

In this case, the Board determined that Trevizo was an employee of El Gaucho. Moreover, substantial competent evidence supports the Board's finding. In particular, Trevizo was hired from a radio advertisement paid for by Sacco and hired by Sacco at a wage set by Sacco. Trevizo also testified that Sacco told him what to do on a daily basis and that he never took directions from anyone else. Conversely, both Trevizo and Christensen testified that they never met, nor did Christensen ever instruct Trevizo as to his work duties. Finally, all the parties agree that Sacco paid Trevizo for his work. This evidence strongly suggests that El Gaucho through Sacco had the right to control and to supervise Trevizo's work and the right to direct his performance and result.

The only evidence detracting from this finding—which we are required to consider under the KJRA—is Sacco's testimony. Sacco testified that he did not hire Trevizo, but that Zamora did. Further, Sacco disputed both Trevizo and Christensen's testimony that the two had never met. Nevertheless, the greater weight of the evidence supports the Board's finding: both Trevizo and Christensen testified that they never met. Moreover, the Board expressly found that Sacco's testimony was "less than persuasive." This court is restricted from reweighing evidence or engaging in de novo review of the evidence. K.S.A. 2010 Supp. 77-621(d).

Accordingly, we determine that the Board's finding that Trevizo was an employee of El Gaucho is supported by substantial competent evidence.

*Is Christensen Liable Under His Contract with Sacco/El Gaucho?*

El Gaucho first attempts to extend liability to Christensen by arguing that Christensen contractually agreed to cover workers, such as Trevizo, when he entered into the written agreement with Sacco. Nevertheless, if a worker is injured while working for two employers, each employer is liable for the proportionate amount of the worker compensation award. See K.S.A. 44-503a. To the

extent that El Gaucho shows that Christensen is liable for Trevizo's injuries, this does not necessarily absolve El Gaucho for its share of Trevizo's award.

The Board considered this argument below. Specifically, when considering Sacco and Christensen's written agreement, wherein Christensen agreed to "[o]versee [c]onstruction quality with the subcontractors" and also declared that "[w]e have workman comp and liability insurance," the Board rejected Sacco's argument that Christensen had agreed to be liable for Trevizo's accident. The Board reasoned that the contract merely stated a fact—that Christensen had workers compensation insurance—that was necessary for licensing purposes. The contract, therefore, did not evidence Christensen's intent to be liable for those workers outside his normal legal obligations.

El Gaucho, however, contends that Sacco's contract with Christensen showed Christensen's intent to assume liability for Trevizo's injury. El Gaucho 's argument is two-fold. First, El Gaucho suggests that the contract is clear on its face. To this end, it points to the clause where Christensen agreed to oversee construction quality of subcontractors, and the statement that Christensen had workers compensation insurance, as unambiguously showing Christensen's intent to provide insurance coverage for injured subcontractors, such as Trevizo.

Second, El Gaucho argues that if the contract is ambiguous, it should be construed against Christensen, the drafter. Under El Gaucho's interpretation, Christensen's declarative statement of insurance coverage should be read as an intent to cover all necessary employees. Furthermore, Christensen's broad statement of quality control over subcontractor work should be read as an agreement to be a general contractor for the entirety of interior work done.

Christensen urges us to adopt the Board's finding: that the contract is mere declaration that Christensen possessed insurance coverage as required under Kansas law. Any other reading, contends Christensen, would effectively and inexplicably be an agreement to insure more workers than the law requires.

This court's primary task in interpreting written contracts is to ascertain the intent of the parties. If the terms of the contract are

clear on their face, the language of the parties is determined without applying rules of construction. *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). For a contract to be ambiguous, there must be provisions or language in the contract containing doubtful or conflicting meaning based on a reasonable interpretation of the contract's language. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 680, 829 P.2d 884 (1992).

Beginning with the first clause of the contract, El Gaucho suggests that it extends liability: Christensen's agreement to "[o]versee [c]onstruction quality with the subcontractors." Nevertheless, the contract does not show Christensen's intent to employ workers such as Trevizo. If El Gaucho is trying to find Christensen liable for a portion of a nonemployee's award, El Gaucho must show that its agreement with Christensen either evidenced an agreement to employ Trevizo, which created an employee and employer relationship, or evidenced Christensen's intent to insure those outside what Kansas law would ordinarily require. Because an employer and employee relationship can be created by contract, El Gaucho seems to be arguing that this clause created an employment relationship between Christensen and Trevizo. See K.S.A. 2010 Supp. 44-508(b) (employment by contract).

But the language of the contract merely indicates that Christensen has final say over the quality of the work done by subcontractors. It does not purport to retain control over the day-to-day construction activities of workers, nor does it even suggest an intent to control the hiring of subcontractors. Rather, as Christensen noted in his deposition, the clause was intended to prevent Sacco from hiring his own subcontractors (as he had intended to do and, in fact, actually did) to do work, and then complain to Christensen, the general contractor, about the quality of the work done.

Moreover, even if we read the clause in El Gaucho's favor and determined that Christensen assumed employment responsibly over all subcontractors, El Gaucho would still need to show that Trevizo was an employee of a subcontractor, rather than independent contractor. See *Harford Underwriters Ins. Co. v. Kansas Dept. of Human Resources*, 272 Kan. 265, 275, 32 P.3d 1146 (2001) ("The primary concern in determining whether an individual is an

employee or an independent contractor is what is done under the contract and not what it states."); K.S.A. 2010 Supp. 44-508(b) (self-employed persons not covered under Act). As discussed, El Gaucho cannot establish that Trevizo is an employee of a subcontractor.

El Gaucho, however, seems to rest most of its contractual argument on Christensen's declaration that "[w]e have workman comp and liability insurance." El Gaucho argues that this clause showed Christensen's intent to insure all workers under his control. Moreover, if the agreement is ambiguous, El Gaucho maintains that it should be read as a promise to "provide workers compensation insurance for the entire project." In light of the statutory requirement that companies like Christensen's carry a workers compensation insurance policy, El Gaucho's interpretation is overly broad. See K.S.A. 2010 Supp. 44-532(b). When read in this context, the clause is best understood as Christensen noting that he has met his statutory burden, not that he has agreed to insure those outside his ordinary legal obligations. This is further supported by the plain language of the clause, which is declarative statement of possession—"We have"—and not an active statement of application or usage. For example, had Christensen agreed to "insure all employees as required under the Kansas law," El Gaucho would have a colorable argument, although it would still need to show Trevizo was an employee of Christensen's.

As written, the insurance clause unambiguously states that Christensen has insurance coverage and does not represent an agreement on the scope of coverage. To broadly interpret a clause noting compliance with statutory and licensing requirements beyond this would lead to absurd results and would not represent the intent of the parties. See *Wichita Clinic v. Louis*, 39 Kan. App. 2d 848, 853, 185 P.3d 946, *rev. denied* 287 Kan. 769 (2008) (court should avoid reaching unreasonable interpretations leading to absurd results).

In summary, the agreement between Sacco and Christensen—as outlined in their written agreement—does not evidence Christensen's agreement to provide insurance coverage for Trevizo's injury. The contract neither shows an agreement to control all sub-

contractors, thereby creating an employee and employer relationship with Trevizo, nor does it illustrate Christensen's intent to insure all workers on the jobsite. While a better practice would have been to specify Christensen's intent to restrict coverage, the contract is insufficient to extend liability as written. Accordingly, the Board properly interpreted the contract and determined that Christensen was not liable for Trevizo's injury under the contract with Sacco/El Gaucho.

*Is Christensen Equitably Estopped From Denying Coverage?*

Next, El Gaucho contends that it detrimentally relied on Christensen's assurance that he was providing workers compensation insurance for the entirety of the worksite. Because Kansas law does not let a party misrepresent its position at the cost of another, El Gaucho urges this court to apply the doctrine of equitable estoppel to find Christensen liable.

In support of its argument, El Gaucho points to Sacco's testimony, as well as that of Paul Dugan, another one of El Gaucho's owners. According to Sacco, he purchased insurance only for restaurant operations. Sacco further testified that Christensen told him that he had workers compensation insurance; therefore, there was no need to worry if there was an accident during the construction of the restaurant. Dugan backed-up Sacco's testimony, noting that a letter he sent Christensen after Trevizo's injury requested that Christensen's insurance company cover the accident.

Christensen does not dispute either Sacco's or Dugan's testimony. Nevertheless, as a matter of law, Christensen argues that equitable estoppel cannot be used to impose liability for a worker's injury where an employer would otherwise not be obligated to provide coverage: when there is not an employer and employee relationship. Furthermore, Christensen argues that even under the facts presented, Sacco cannot establish that the elements of equitable estoppel were met in this case.

At the administrative level, the Board rejected El Gaucho's equitable estoppel argument for a different reason: It determined that there was an adequate legal remedy for any alleged breach of contract. The Board reasoned that because an adequate remedy at

law existed, no equitable remedy was available (citing *Nelson v. Nelson*, 288 Kan. 570, Syl. ¶ 19, 205 P.3d 715 [2009]).

The doctrine of equitable estoppel was applied to a workers compensation case in *Marley v. M. Bruenger & Co.*, 27 Kan. App. 2d 501, 504-05, 6 P.3d 421, *rev. denied* 269 Kan. 933 (2000). The *Marley* court recognized that equitable estoppel is premised on the principle of consistent conduct: "[I]t should [not] be permissible for a claimant in a workers compensation action to change his or her position." 27 Kan. App. 2d at 505. To establish a successful claim for equitable estoppel—and therefore prevent an opposing party (here, Christensen) from changing its position (here, denying insurance coverage for Trevizo's injury)—a party must show that another party induced it to believe certain facts, that it relied on those facts, and that it would be prejudiced if the other party were to deny the existence of those facts. 27 Kan. App. 2d at 504-05 (quoting *Brown v. Westerhaus*, 224 Kan. 42, 45-46, 578 P.2d 1102 [1978]).

In this case, El Gaucho asserts that Christensen induced it to believe that Christensen had insurance coverage, that the coverage would insure against all accidents during the construction, and that its reliance on those facts harmed El Gaucho.

Neither the law nor the facts supports El Gaucho's position. In considering the legal basis for El Gaucho's claim, as Christensen points out, El Gaucho is asking the court to extend the equitable estoppel doctrine beyond its normal application; namely, El Gaucho wants this court to prevent Christensen from denying coverage in a situation where Christensen would otherwise not be liable. Because Trevizo is not an employee of Christensen, Christensen is not liable for Trevizo's workplace injury under Kansas law. If we adopt El Gaucho's argument, it would impose liability when none would otherwise exist. In other words, El Gaucho would still need to show an employer and employee relationship even if it prevails on its claim. Such an extension is beyond what Kansas courts have historically done in workers compensation cases. See, *e.g.*, *PMA Group v. Trotter*, 281 Kan. 1344, 1353-54, 135 P.3d 1244 (noting that equitable estoppel cannot "make something from nothing" when no claim existed); *Hartford Underwriters Ins. Co.*, 272 Kan.

at 276-78 (determining whether conduct gave rise to employer and employee relationship); *Marley*, 27 Kan. App. 2d at 504-05 (interpreting written agreement to determine whether employee and employer relationship existed).

Because El Gaucho is attempting to use estoppel as a means to prove that Christensen agreed to provide workers compensation insurance, it still must prove that Trevizo should have been covered under the policy. As previously discussed, it has failed to do so. Consequently, El Gaucho cannot use estoppel to expand Christensen's insurance beyond what the law would ordinarily allow.

Nor can El Gaucho show that the facts support its estoppel claim. Even accepting El Gaucho's testimony as true, El Gaucho cannot establish that Christensen induced El Gaucho, through misrepresentation, to its detriment. For example, El Gaucho can show only that Christensen stated he was insured. Nevertheless, Christensen was insured. This was not a misrepresentation. The extent of coverage was not determined by what Christensen stated, but rather by application of law: Was Trevizo an employee of Christensen's?

Stated another way, Sacco's version of what Christensen told him only established the expectation that there was insurance. It did not suggest the extent of the coverage. The record does not support the necessary assertion that Christensen agreed to cover any independent contractors or employees of others through his policy. Thus, El Gaucho cannot prove that Christensen made a misrepresentation during their negotiations.

Furthermore, it is not clear that El Gaucho actually suffered any harm. The record shows that El Gaucho is insured by the KHRA. Presumably, KHRA is going to pay Trevizo's claim; otherwise, its appearance in this appeal would be unnecessary. The record does not suggest that El Gaucho's premiums rose as a result of Trevizo's claim; nor does the record show other financial harm suffered by Sacco. KRHA may have suffered a detriment, but KRHA was never induced to enter into an agreement with El Gaucho.

In conclusion, El Gaucho is asking us to extend the doctrine of equitable estoppel such that it affirmatively creates a duty for Christensen to insure an individual in a situation where the law

would not otherwise demand he do so. Moreover, El Gaucho cannot prove that Christensen made a misrepresentation or that El Gaucho relied to its detriment on that misrepresentation: two necessary elements to its equitable estoppel claim. For all of these reasons, we reject El Gaucho's claim of equitable estoppel.

*Does K.S.A. 44-503 Extend Liability to Christensen?*

As a final matter, El Gaucho argues that liability should be extended to Christensen through K.S.A. 44-503(a). El Gaucho's argument involves both statutory interpretation, as well as a review of the Board's factual findings. Nevertheless, before addressing the substance of El Gaucho's argument, it is necessary to explore the statutory vehicle El Gaucho intends to use: K.S.A. 44-503(a).

In review, an employer is generally only liable for workers compensations benefits for its employees. See K.S.A. 2010 Supp. 44-501(a). Moreover, as discussed earlier, because Trevizo was not an employee of Christensen's, Christensen is not directly liable for Trevizo's compensation award. Nevertheless, the Act also extends liability to the so-called "statutory employer" of the injured worker. *Robinett v. The Haskell Co.*, 270 Kan. 95, 98, 12 P.3d 411 (2000). This is done through K.S.A. 44-503.

Our courts have observed that the purpose of K.S.A. 44-503 is to prevent employers from evading their statutory obligations under the Act. In order to accomplish its purpose, the statute allows employees to recover against either their immediate employer or their employers' employer (*e.g.*, a general contractor) when injured while engaging in certain types of work. *Robinett*, 270 Kan. at 98. Nevertheless, the statute weaves a patchwork of requirements that must be true for an employee to enjoy the benefits of extended liability.

Under K.S.A. 44-503, a principal is liable to pay workers compensation benefits for any worker, as if the worker was directly employed by the principal, if

"[the principal] undertakes to execute any work which is part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the exe-

cution by or under the contractor of the whole or any part of the work undertaken by the principal." K.S.A. 44-503(a).

Thus, for a principal to be liable for a statutory employee's worksite injury, the principal must (1)(a) undertake work which is a part of the principal's trade or business, or (1)(b) which the principal has contracted to perform; and (2) contracts with another (contractor) to perform the work undertaken by the principal. In such cases, a worker who is engaging in either the trade or business, or the contracted-for work, may hold the principal liable under the Act for his or her injury even though the principal is not his or her direct employer.

Here, El Gaucho argues that Christensen was a principal (general contractor) under K.S.A. 44-503 undertaking work both within his trade or business and contracted-for work. Furthermore, El Gaucho contends that Christensen contracted with Sacco (as a subcontractor) to perform the work undertaken by Christensen. Finally, El Gaucho argues that Trevizo was engaging in this work as Sacco's employee and, therefore, is a statutory employee of Christensen's. In sum, El Gaucho must prove three things:

- That Christensen was either engaged in a trade or business, or contracted to do the work, which Trevizo was undertaking when injured;
- That Christensen contracted with Sacco—as an uninsured subcontractor—to undertake his responsibilities; and
- That Trevizo was an employee of Sacco's, Christensen's subcontractor

Nevertheless, because of the Board's adverse factual findings concerning Trevizo, El Gaucho is unable to extend liability to Christensen under K.S.A. 44-503. First, the Board determined that Trevizo was not engaging in work Christensen contracted to perform under the written agreement with Sacco. The Board also noted that Trevizo was completing work that was the responsibility of Sacco's and, therefore, presumably not within Christensen's trade or business. The Board also found that Sacco was not a subcontractor of Christensen's. In addition, the Board did find that Trevizo was an employee of Sacco's. Finally, it is unclear whether

El Gaucho or Sacco, as the subcontractor, had secured workers compensation coverage (K.S.A. 44-503(f) gives the principal the right of subrogation against the subcontractor).

Christensen offers two other roadblocks to the application of K.S.A. 44-503. Each of these hurdles to El Gaucho's argument will be addressed individually.

*Christensen Was Not Responsible for the Work Trevizo Was Doing*

Substantial competent evidence supports the Board's findings that Trevizo was neither engaging in work that Christensen had contracted do, or work that was within Christensen's trade or business. As described earlier, the agreement between Christensen and Sacco was a unique one. While Christensen noted that he was the general contractor for Sacco's portion of the El Gaucho construction, his responsibilities were far less than what is ordinarily undertaken by a general contractor. In this case, Trevizo was injured while constructing a table that, in his words, was to be used in the operation of the restaurant. Nevertheless, as the Board pointed out, Christensen was hired as an architect, for which his main responsibility was to oversee the quality of the interior work performed. The agreement did not cover the construction of tables for the restaurant.

Moreover, El Gaucho has failed to show that building tables for use in restaurants is within Christensen's trade or business. Our Supreme Court has articulated a test for whether work being performed is within a principal's trade or business. *Hannah v. CRA, Inc.*, 196 Kan. 156, 159-60, 409 P.2d 786 (1966):

"(1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? [and] (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?"

The *Hannah* court noted that "[i]f either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act." 196 Kan. at 160.

In this case, neither *Hannah* test can be answered in the affirmative. The record does not detail the extent of Christensen's trade or business; however, in light of what the record does reveal, building tables for restaurants is not Christensen's trade or business. We do know that Christensen, as general contractor and architect, is in the business of plumbing, electrical work, mechanical engineering, and electrical engineering. Moreover, through his agreement with Nordyke, we also know that Christensen installed interior walls, constructed the bathroom, and installed the concrete floor. Nevertheless, none of these activities suggest that Christensen was in the business of building interior furniture. As a result, El Gaucho has not met its burden as the challenging party to establish that what Trevizo was doing was integral to Christensen's trade or business. See K.S.A. 2010 Supp. 77-621(a)(1).

Similarly, El Gaucho has not met the second *Hannah* test either. In light of what duties Christensen agreed to do—*e.g.*, plumbing, engineering, and flooring—El Gaucho cannot say that Trevizo was engaging in work that Christensen's employees would normally be doing. This was not a case where Christensen hired an independent contractor to finish some of his construction duties, nor is this a case where El Gaucho hired a subcontractor to finish Christensen's obligations either. Although El Gaucho may have had a colorable argument had Trevizo injured himself while laying tile (work for which he was originally hired), Trevizo was injured while building a table in accordance with Sacco's orders.

Because Christensen neither contracted to build tables for El Gaucho Steakhouse, nor normally engaged in the business of building tables, a necessary requirement of K.S.A. 44-503(a) is not met: Trevizo must have been injured while engaging in work the principal either contracted to, or normally does, perform. Liability, therefore, cannot be extended to Christensen under the statute. As a result, El Gaucho's statutory argument fails.

Affirmed.